legislature, sponsored by Senator Don Nichols and signed into law by then-Governor

Reuben Askew.[2]  The NCCUSL Commissioners did not provide a definition for

"irretrievable breakdown."[3] The jurors in the <u>Ryan</u> case based their Opinion on deceptive

information fed to them by the Commissioners, taken from the Morton Commission Report

upon which the no-fault "breakdown" ground was originally predicated:

> "There is the case of the long and happy marriage broken by the husband's
> infatuation for a younger woman; the case of the wife treated with gross cruelty by her
> husband before he deserts her; the case of the deserted husband left with a young
> family to bring up. In cases such as these, if the injured spouse does not wish to be
> divorced, it would, we feel, be repugnant to contemplate the possibility of **forcing
> divorce** on that person."
>
> **"To grant a divorce to the "offender" under the breakdown theory would
> run counter to the clean-hands doctrine of equity and the notion that a person
> may not take advantage of his own wrong".** [4]" (emphasis added).

11. Husband approached the court with unclean hands and Garland has influenced him to

collude with her in weaving a web of deception. The goal is to impugn Wife in the eyes of

the court and also to **coerce** Wife into **"consenting"** to the dissolution of the marriage.

Coercive tactics have increased over time in order to put greater pressure on Wife to

"consent" and therefore, to get her to begin working on the "settlements." Meanwhile, Wife,

who is also a clinical psychologist and researcher, believes that the state's act of intentional

infliction of emotional and psychological harm on children through its policy of "state-

forced" and "involuntary" divorce is unconscionable.  Child will be impacted emotionally

and psychologically for the rest of her life and the impact is intergenerational.  The State of

Florida shows through this law that it places little value on preserving the intact family,

which is the fabric of society.

---

[2] See attached document, "Florida and the UMDA," [APPENDIX A]
[3] Irretrievable Breakdown Not Defined – [APPENDIX B]
[4] From the report of the Royal Commission on Marriage and Divorce, supra note 109, at 17.

12. Husband's actions reveal that he is perpetrating a fraud upon the court in that the marriage is far from being "a hollow sham." According to the <u>Ryan</u> Opinion:

> A contrived, false or fraudulent creation of the ground upon which dissolution is sought, for the very purpose of terminating the marriage through what amounts to a misuse, in effect, a fraud upon the courts could no more be tolerated in this than in any other litigation. The courts will not knowingly become a party to contrivance or fraud, even in the simplified basis for divorce which has now been created by the new statute. This is inherent in the judicial process. It is not limited to a future discovery of the fraud but may become apparent in the proceedings for dissolution, in which event the court should deal directly with it in such proceedings. In this there may be a direct fraud perpetuated upon the other spouse by misrepresentations, concealments or untruths, manifesting itself either in the course of the proceeding or at a later time. The courts will not indulge or reward falsehood and when such a purposeful inducement or fraud upon the other spouse or the court is made to appear by the evidence, then there would be a failure of proof that the marriage is irretrievably broken. The proof having failed in such instance, there would accordingly not be sufficient evidence upon which to grant the relief sought. This is not based upon a continuation of 'fault" as a basis for relief which was required under the former divorce law but as a matter of fraud and deceit. This recognition of such a fundamental concept of equity is necessary in order to preserve the integrity of the judiciary, lest it become a party to a fraud or allow a misuse of the judicial machinery. Not even under the statutory imposition can an independent judiciary which is the ultimate protector or right and justice, be subjugated and undermined. (Opinion, p. 11-12)

13. One of the greatest travesties in this case is that the doors of the court are open to Husband, even though he comes with 'unclean hands.' His dishonesty is the prima facie evidence that drives the entire case. Such a process reveals an incredibly defective law, when a plaintiff is not ever asked to explain his petition at the beginning of the process, and the only testimony considered is his answer to the simple five-word question, "Is the marriage irretrievably broken?" The process is based on "Petitioner's Word Alone" no matter how impaired his reasoning may be or how emotionally or psychologically encumbered he is.

14. Marital relations are Human relationships and cannot be treated with such a uni-dimensional response as that of a legal remedy alone. **Human relationship problems are not adjudicable.** They need treatment other than that of a legal response which is a response

that overlooks or ignores the emotional, psychological, spiritual, or even physical dimensions of the problem. Divorce, as it is now handled in the courts, is treated as a legal issue alone when (if it must be handled in the courts at all) it should be handled more humanely with "therapeutic jurisprudence" in the way that divorce was once handled by conciliation courts, but no such response is offered in Florida for families facing the threat of a dissolution action. Divorce is not the 'solution' for the couple struggling with marital problems because 'divorce' will not solve their problems for these are problems that most likely emanate from past psychological damage whereby 'divorce' becomes a 'displacement' that is used to avoid or 'deny' the reality of an internal struggle. [Wife is a clinical psychologist and has worked with many patients caught in this struggle.

15. The way the law is currently applied is a complete distortion of the original stated intent, and even further psychological damage is inflicted upon children and spouses whose lives are in the hands of our elected state officials, through the guise of the Florida 'public policy' they implement and uphold, supposedly carried out for the 'public good.' By enforcing a public policy of 'state-forced' divorce and thereby, denying treatment for the actual marital and psychological difficulties, whether the kind of intervention needed is psychological, medical, and/or spiritual intervention, the state is engaging in act that could be classed as 'crimes against humanity.' To continue to prosecute dissolution cases based on 'Petitioner's Word Alone', without any inquiry into the mental state of the petitioner or doing any kind of inquiry is unconscionable, and is an intentional infliction of emotional and psychological harm upon all members of the family.

**Mallory Law Firm Irregularities in Representing Husband,**
**Attorney-Malfeasance and**
**The Firm's Role in "Breaking Down the Family"**

16. Attorneys with the Mallory Law Firm have been the exclusive legal representatives of

Husband throughout the case. The three attorneys within the firm that have represented

Husband as evidenced by their signatures on pleadings are: Rhonda R. Werner Schultz, Earl

K. Mallory who is the owner of the firm, and Natalie M. Garland. Schultz entered the case

by her signature on the first pleading, but the two subsequent attorneys did not individually

file Notices of Appearances and there was no order of the court admitting them. Florida

Rules of Judicial Administration, Rule 2.505 states the following:

Rule 2.505(e) An attorney may appear in a proceeding in any of the following ways:
(1) By serving and filing, on behalf of a party, the party's first pleading or paper in the proceeding.
(2) By substitution of counsel, but only by order of court and with written consent of the client, filed with the court. The court may condition substitution upon payment of, or security for, the substituted attorney's fees and expenses, or upon such other terms as may be just.
(3) By filing with the court and serving upon all parties a notice of appearance as counsel for a party that has already appeared in a proceeding pro se or as co-counsel for a party that has already appeared in a proceeding by non-withdrawing counsel.

Schultz complied with Rule 2.505(e)(1) but neither Mallory nor Garland complied with any

three of the above Rules. Schultz properly entered the case by her signature on Husband's first

pleading but Mallory and Garland did not follow the Rules of Judicial Administration.

17. In 2006, while Mallory was representing Husband, Wife discovered that Mallory had been

incarcerated for drug-trafficking. Wife discovered this story in the Palm Beach Post from

February 16, 1994:

**Lawyer Wants Clean Slate**
When Earl K. Mallory and two other men were caught trying to sell nearly 9 pounds of cocaine to an undercover police officer 14 years ago, prosecutors called it one of the biggest drug busts in St. Lucie County's history.
A former real estate agent and schoolteacher, Mallory served 13 months of a 10-year prison term and found success in the construction management industry after his release.
On Tuesday, he stood before a St. Lucie circuit court judge with his Florida Bar license in hand, seeking to have his 1979 record expunged after passing the Bar and

obtaining a governor's pardon in 1993.

Although prosecutors argued Mallory's record should remain intact to serve as a reminder of his crimes, the 43-year-old Jupiter lawyer says he's not the same person who was arrested 14 years ago.

"I'm one of the few people that learned a lesson from going to prison," said Mallory, who says he married and grew close to God after his release. He has no other criminal record.

"I went to law school on total faith that the Bar would one day accept me."

Circuit Judge Larry Schack denied Mallory's motion Tuesday to erase the court record because he said the request was not worded properly and no notice was given to the media.

Mallory said he intends to re-file - an option allowed by Schack - and will appeal to a higher court if he loses again.

"I committed a crime, and I did my time," said Mallory, who opened a law practice in Jupiter Dec. 1 and handles civil cases.

"When the arrest happened it was a very big deal in St. Lucie County, but that's ancient history."

Assistant State Attorney Lynn Park, who argued against Mallory's motion Tuesday, doesn't agree. Although Park said she might favor expunging someone's record if his or her career depended on it, she said Mallory was admitted to the Bar in spite of his conviction and she sees no reason to erase it.

This was a very serious drug case - one of the biggest busts that ever hit this county at the time," Park said. "I don't think his record should be wiped clean. He's in a position of trust, and if anyone wants to check his record they should be able."

Mallory said he fears opposing attorneys will use the information to prejudice courts against his clients, an action he called improper but not impossible.

"I don't want to prejudice my clients by having some attorney digging into my file in the future," Mallory said. "I'm not the only felon who's been admitted to practice law, but I sure had to go through an exhaustive process."□                    Mallory applied for Bar entrance in 1990, shortly after enrolling at Nova University's law school. Because of his felony conviction, he knew it would take Bar examiners longer to approve his application.

Two years and dozens of law courses later, Mallory got the word - he could become a lawyer if he passed the Bar exam.

Gov. Lawton Chiles issued him a full pardon a few months later, blotting out his conviction on charges of conspiracy to traffic in cocaine, but leaving intact court papers on file in St. Lucie County.

Wife discovered a follow-up account in the Palm Beach Post from October 25, 1994:

Fort Pierce Circuit Judge Larry Schack ordered the criminal record of a Jupiter attorney sealed Monday. Earl K. Mallory, 43, was arrested in 1979 for trying to sell nearly 9 pounds of cocaine to an undercover officer. He was convicted and served 13 months of a 10-year sentence. After his release he went to law school at Nova University, was admitted to the Florida Bar despite his record and received a pardon from the governor. Monday's order will allow Mallory to say he has never been arrested or convicted of a

. or in court.

, the Florida Bar despite his criminal

arrest happened it was a very big deal in St.

also: "I'm not the only felon who's been admitted to

, reformed: "…[he] says he's not the same person who

,n now earn a living, practicing law as an "officer of the

,ts will not learn of his record unless they dig into archival

, informed Husband of Mallory's record, Husband changed

attorney.          ,d later claimed it was due to Mallory's high hourly fees. Garland then

entered the case, ,    ,ntinues to represent Husband up to present time.

18. Husband relied on Mallory to advise him when Husband was first "exploring" the idea of
filing for divorce. Husband has repeatedly told Wife that his attorneys told him he could
get a "no-fault" divorce and that all he had to do was ask for one. During 2005, Wife called
the Mallory firm and spoke with Earl Mallory, asking him about his public avowal that he
was a changed person and a Christian. Wife asked Mallory whether, in fact, he felt good
about helping to break up a family, and Mallory responded proudly, "I can get your husband
divorced in one week!"

19. During another occasion, Wife was able to meet Mallory face-to-face when she went to the
Mallory law office in July of 2006 to take part in a mediation session set up by Garland.
During that visit to the office, Wife wanted to tape the mediation session (this is allowable in
Florida) and, when the mediator and Garland objected, Mallory appeared, shouting at Wife,
"*Call 911.*" And pursued her, trying to grab the tape recorder from her and causing Wife and
her sister-in-law to leave the premises feeling terrorized.

disqualifying Garland, awarding Wife monetary sanctions (including attorney fees) against

plaintiff and plaintiff's counsel in an amount to be determined, and holding Attorney

Garland in contempt of court.

## CERTIFICATE OF SERVICE.

I HEREBY CERTIFY THAT a true and correct copy has been furnished by U.S. Mail

and E-Mail to Mallory: this 27th day of ~~January~~ *FEB*, 2008, to the distribution list below.

The Law Office of Inger M. Garcia

Inger M. Garcia Esquire
533 NE 3rd Avenue
Sole' Building Ground Floor,  Ste 2
Ft. Lauderdale, Florida 33301
Phone: 954-894-9962
Fax: 954-446-1635
Fla. Bar No. 106917
Inger13@aol.com

### Distribution List

Clerk of Palm Beach Circuit Court
Palm Beach County Courthouse
North County Courthouse
3188 PGA Blvd.
Palm Beach Gardens, FL 33401-4599

Natalie M. Garland, Esq.
Mallory Law Group
1907 Commerce Lane
Suite 104
P.O. Box 8858
Jupiter, Florida 33468-8858
Tel: 561-743-3708
Fax:  561-743-3729
E-Mail:  nmgmig@bellsouth.net

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 502005DR001269XXXXNB
FAMILY DIVISION "FH"

IN RE: THE MARRIAGE OF
JEFFREY P. LAWSON,
    Petitioner/Husband,

and

KATHY ANN GARCIA-LAWSON,
    Respondent/Wife.
_____/

## ORDER DENYING WIFE'S MOTION FOR
## LEAVE TO AMEND THE COUNTER-CLAIM

THIS MATTER comes before the court upon Wife's Motion for Leave to
Amend the Counter-Claim filed on February 27, 2008 (the "Motion"). For the
reasons that follow, the court finds that the Motion should be denied.

### I. PROCEDUREAL HISTORY AND BACKGROUND

By way of background, Husband's Petition for Dissolution of Marriage was
filed on February 1, 2005.  On March 29, 2005, Wife filed her initial Counter-
Petition in which she set forth a single count seeking Separate Maintenance.
More than three years have passed and this case has yet to be tried.  In the
interim, Wife has resisted every attempt to have this case heard on the merits
and has successfully engaged in delay tactics designed to unnecessary prolong
the litigation and to stymie Husband in his efforts to have his long-awaited day in
court.  Indicative of these efforts is a court file that already exceeds six volumes
and 267 separate docket entries. Wife has changed counsel on four occasions[1]
and has moved to disqualify both the previously assigned trial judge and the

---

[1] Wife's current attorney filed a motion to withdraw on May 15, 2008 (docket entry #250)  That motion,
together with a motion for temporary relief, was later withdrawn on June 12, 2008 (docket entry #254), the
day of the specially set hearing.

EXHIBIT

B

Page 2
Case No 502005DR001269XXXXNB
Lawson v. Lawson

undersigned judge. She has been sanctioned for failure to follow court orders and has been found to be in contempt. Wife has been dilatory in providing discovery and has twice unsuccessfully petitioned the Fourth District Court of Appeals to contest prior rulings of the court. Trial has previously been set several times, only to have been continued upon the motion of Wife or her newly retained counsel.

This is not Wife's only motion to amend. On June 7, 2007, this court permitted Wife to amend her affirmative defenses and to add counter claims. Thereafter, on July 18, 2007, the court dismissed Counts II, III, and IV of Wife's Amended Counter Petition, all of which sounded in tort. Wife's claim for Separate Maintenance was allowed to stand and Wife was granted 10 days to file an amended pleading. Rather than timely file an amended pleading, Wife failed to take any action until February 27, 2008, when her current attorney sought leave to file this most recent amendment to the Counter-Petition. The amendments ask for declaratory and injunctive relief in an attempt to declare Chapter 61, Florida Statutes, unconstitutional.

One item missing from the docket sheet is Wife's Motion to Dismiss as a Sanction for Fraud. This 59 page motion, aside from being a largely incoherent and prolix pleading, makes serious ethical and criminal charges against nearly everyone associated or even tangentially connected with the litigation, but most particularly Husband's attorney and her law firm, including allegations of perjury, conspiracy, and *ex parte* conversations with the prior trial judge assigned to this case. Given the gravity of these allegations, a three hour specially set hearing on the motion was coordinated between the court and all counsel.

When counsel for the Husband informed the court that the fraud motion had not yet been docketed, Wife's attorney appeared noticeably surprised and advised the court that she had personally "dropped off" the original pleading with the clerk, but promised that she would immediately file another copy. Curiously,

Page 3
Case No. 502005DR001269XXXXNB
Lawson v. Lawson

the certificate of service also averred that a true copy had also been furnished to the clerk's office. Not only did Wife's counsel not file a copy with the clerk as promised, she later served a motion seeking to reset the specially set hearing wherein she stated for the first time that the fraud motion was served to opposing counsel but never filed with the court. Counsel for the Husband rightfully inquires as to why the Wife's Motion to Dismiss as a Sanction for Fraud upon the Court would be served on opposing counsel, provided to the court, and set for hearing, but never filed with the clerk. The end result of the Wife's actions was to again further delay these proceedings and prevent the case from being at issue so that it might finally be set for trial. To this date, the fraud motion remains unfiled.

It also appears that Wife was directly responsible for the cancellation of the court's most recent attempt at mediation in this case. Prior efforts at obtaining meaningful mediation all ended in failure due to conduct or circumstances directly attributable to Wife. As a result, this court previously waived its standing order requiring mediation. However, at the insistence of Wife's current counsel and over the objection of Husband's attorney, the court was persuaded that another attempt at a good faith mediation was warranted. The court allowed Wife to select a mediator of her own choosing and a date was mutually agreed to and coordinated in advance between the parties and the mediator. Shortly before the scheduled mediation date the mediator advised the parties that she was no longer willing to mediate this case. While the circumstances surrounding her decision are not entirely clear, it apparently occurred following an unsolicited telephone call to the mediator from the Wife. This is yet another example of Wife interjecting delay into these proceedings.

It is against this factual backdrop that the court considers the Wife's Motion.

Page 4
Case No. 502005OR001269XXXXNB
Lawson v. Lawson

## II. LEGAL ANALYSIS

The court is not unmindful of the liberality normally accorded motions to amend. Bradham v. Hayes Enterprises, Inc., 306 So.2d 568 (Fla. 1st DCA 1975). However, it has long been recognized that "this 'liberality' gradually diminishes as the case progresses to trial." Versen v. Versen, 347 So.2d 1047 (Fla. 4th DCA 1977). There is, after all, a time "where each party is entitled to some finality." Noble v Martin Memorial Hospital Assoc., 710 So.2d 567, 568 (Fla. 4th DCA 1998). That time is now.

Wife argues that the court is compelled to grant her Motion pursuant to the holding in Greene v. Well Care HMO, Inc., 778 So.2d 1037 (Fla. 4th DCA 2001). Greene ruled it an abuse of discretion for a trial judge to deny leave of a party to amend unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile. Id. at 1041.

As set forth in great detail above, Wife has repeatedly acted in a manner to prevent this case from going to trial. Given that the case has languished on the docket for more than three years, her efforts so far have been successful. It is an abuse of the amendment process to invoke Rule 1.190 in order to perpetuate delay. In this case, Wife was granted leave to amend previously and when portions of her amended counter-petition where dismissed, she was granted additional time in which to again file another amended pleading. From the onset of the litigation, Wife has been outspoken in her view that Florida's statutory no-fault divorce statute was constitutionally infirm, but waited until the eve of setting this case for trial to seek leave to amend her counter-petition to make such a claim.

The prejudice to the Husband is obvious. His life has effectively been put on hold for the past three years as his efforts to obtain a ruling on his petition for dissolution have stalled. The delay has not only cost him time but money as well. Husband's counsel recently indicated he has spent in excess of $100,000 in fees

Page 5
Case No. 502005DR001269XXXXNB
Lawson v. Lawson

to date defending this action. If the Wife is allowed to amend her pleadings at this late date, the case will no longer be at issue and the July 30, 2008 trial will be delayed indefinitely, possibly for a year or longer, as new parties will have to be served, answers filed and additional discovery taken.  Costs and fees can be expected to escalate beyond the parties' limited means.  If the time standards established by the Florida Supreme are to be given anything more than lip service, this Motion must be denied. See Rule 2.250, Fla. R. Jud. Admin. (Contested domestic relation cases should be completed within 180 days from filing).

While this court offers no opinion as to the merits of the proposed amendments, the court notes that the constitutional issues raised by Wife appear to have been previously addressed by the Florida Supreme Court in the landmark case of Ryan v Ryan, 277 So.2d 266 (Fla. 1973) and its numerous progeny, wherein the Court upheld the constitutionality of Florida's 'no-fault' divorce law, including the abolishment of certain defenses, including the 'clean hands principle'. If that is the case, the amendment would indeed be futile.

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that Wife's Motion for Leave to Amend the Counter-Claim is DENIED.

DONE AND ORDERED this 19th day of June, 2008, in Chambers in Palm Beach Gardens, Florida.

SIGNED AND DATED

JUN 1 9 2008

RICHARD L. OFTEDAL

_____
Richard L. Oftedal
Circuit Judge

Copies furnished:
Natalie M. Garland, Esq., 1907 Commerce Lane, Suite 104, Jupiter, Florida 33468
Inger M. Garcia, Esq., 533 N E. 3rd Avenue, Ground Floor – Suite 2, Fort Lauderdale, Florida  33301

**FedEx. US Airbill**
Express

8668 3350 9630

**Recipient's Copy**

**1 From** This portion can be removed for Recipient's records.

Date 10/22/08   FedEx Tracking Number   8668 3350 9630

Sender's Name _____ Phone _____

Company _____

Address _____

City _____   State _____   ZIP _____

**2** Your Internal Billing Reference

**3 To**

Recipient's Name _____ Phone _____

Company _____

Recipient's Address _____

City _____   State FL   ZIP 33409-5940

**4a Express Package Service**
- FedEx Priority Overnight
- FedEx Standard Overnight
- FedEx First Overnight
- FedEx 2Day
- FedEx Express Saver

**4b Express Freight Service**
- FedEx 1Day Freight
- FedEx 2Day Freight
- FedEx 3Day Freight

**5 Packaging**
- FedEx Envelope
- FedEx Pak
- FedEx Box
- FedEx Tube
- Other

**6 Special Handling**
- SATURDAY Delivery
- HOLD Weekday
- HOLD Saturday
- Cargo Aircraft Only
- Dry Ice

**7 Payment**
- Sender
- Recipient
- Third Party
- Credit Card
- Cash/Check

Total Packages   Total Weight   Total Declared Value

**8 Residential Delivery Signature Options**
- No Signature Required
- Direct Signature
- Indirect Signature

519

9668 3350 9630

# MALLORY LAW GROUP

ATTORNEYS AT LAW
1907 COMMERCE LANE - SUITE 104
P.O. BOX 8858
JUPITER, FLORIDA 33468-8858
TELEPHONE (561) 743-3708
FACSIMILE (561) 743-3729

EARL K. MALLORY*
CHARLES R. BONING
NATALIE M. GARLAND**
K. JOY MATTINGLY
* ALSO ADMITTED TO PRACTICE IN COLORADO
** ALSO ADMITTED TO PRACTICE IN PENNSYLVANIA

ANNELIESE M. KOEHLER-GARDNER, ACP
PARALEGAL

October 16, 2008

**VIA FEDERAL EXPRESS**
**BAR COMPLAINT**

The Florida Bar
Attn: James N. Watson, Jr.,
      Chief Disciplinary Counsel
651 E. Jefferson Street
Tallahassee, FL 32399-2300

        Respondent:            Inger M. Garcia, Esq.
                               3389 Sheridan Street
                               Suite 546
                               Hollywood, FL 33021
                               Telephone: 954-524-0506
                               Fla. Bar No. 106917

        Complainants:          Charles R. Boning, Esq.
                               Fla. Bar No. 0100961
                               Earl K. Mallory, Esq.
                               Fla. Bar No. 0980617
                               Mallory Law Group
                               P.O. Box 8858
                               Jupiter, Florida 33468
                               Telephone: 561-743-3708

Dear Bar Counsel:

     The undersigned law firm represents Petitioner, Jeffrey P. Lawson (hereinafter "Husband"), in divorce proceedings against Respondent, Kathy Ann Garcia-Lawson (hereinafter "Wife"). These proceedings were initiated in the Circuit Court of the 15th Judicial Circuit in Palm Beach County (Case No. 502005DR001269XXXXNB). However, wife subsequently filed a related proceeding in the Circuit court of the 2nd Judicial Circuit in Leon County (Case No. 37 2008 CA 002304). Attorney Inger M. Garcia, Esq. currently

represents wife in both proceedings. The thrust of this Complaint is that Ms. Garcia's conduct in the Leon County case violates § 838.015 (Bribery), Fla. Stat., and constitutes conduct prejudicial to the administration of justice.

### Facts and Procedural Background

Wife is an opponent of no-fault divorce. She has engaged in every conceivable delay tactic in her three-and-a-half-year effort to deny Husband a divorce in the 15th Judicial Circuit. These tactics include multiple changes of counsel timed to delay final hearing; refusals to attend and attempts to sabotage mediation; discovery violations resulting in sanctions and a finding of contempt; multiple attempts to disqualify trial judges; intemperate accusations of misconduct by court personnel; false charges of criminality and unethical conduct by Husband's counsel; two failed petitions to the Fourth District Court of Appeal; bankruptcy filed on the eve of the most-recently-scheduled final hearing, and a multitude of other abuses, not addressed through this Complaint.

The trial court in the 15th Circuit denied Wife's most recent Motion for Leave to Amend her pleadings, based on Wife's misconduct and delay tactics (Copy of order attached as Exhibit "A"). Wife, acting *pro se*, then filed the substance of the proposed Counterclaim as a separate action in the 2nd Circuit. She also filed a near-identical action in the United States District Court, Southern District of Florida (Case #CIV-08-80865). In these cases she named as Defendants the trial judge in the 15th Circuit Case, Hon. Richard L. Oftedal; opposing counsel in the 15th Circuit Case, Natalie Garland; and others. (Copy of 1st page of Complaint, showing style, attached as Exhibit "B")

On September 23, 2008, Wife's counsel, Inger Garcia, Esq., appeared as counsel in the 2nd Circuit Case. She immediately filed a Motion to Disqualify Judge William Gary - whose only action had been to deny a motion seeking a continuance. The court denied Wife's disqualification motion. Shortly thereafter, attorney Garcia filed a document titled "Notice of Intention to Depose Judge Oftedal." (Copy attached as Exhibit "C") Finally, on October 2, 2008, attorney Garcia distributed to all parties in the 2nd Circuit case a document titled "Tender of Offer to Consolidate & Streamline Civil Rights & Constitutional Litigation into single cause in 15th Judicial Circuit." (Hereinafter the "Letter," copy attached hereto

The Florida Bar
October 16, 2008
Page 3

as Exhibit "D")

The Letter stated that Wife wished to consolidate the defenses and contentions raised by her in the 2nd Circuit case, and in the federal case, into a Counterclaim in the 15th Circuit. It asked that Judge Oftedal grant leave to amend in the 15th Circuit case. It stated: "We, along with Judge Oftedal, now have the power in our hands to eliminate the need for three parallel but related actions. Judge Oftedal has the ability to cure Kathy Lawson's complaints against each of us for her denial of due process by allowing the amending." It offered to dismiss Judge Oftedal from the 2nd Circuit and federal cases in exchange for a reversal of his previous ruling on Wife's Motion for Leave to Amend. The letter did not offer to dismiss any defendant other than Judge Oftedal. Indeed, by all appearances, it threatened to continue proceedings against the remaining defendants before Judge Oftedal in the 15th Circuit.

Ms. Garcia discussed the Letter in open court before Judge Oftedal, in the 15th Circuit, in a hearing that occurred on the afternoon of October 2, 2008. She offered to provide a copy directly to Judge Oftedal. In addition, Wife attached a copy of the Letter to a recent motion filed in her action before the United States District Court, Southern District of Florida. Ms. Garcia's Letter was met with quick condemnation from Daniel S. Dearing, counsel to Judge Oftedal and other state Defendants. On October 2, 2008, he wrote to Inger M. Garcia, noting, in pertinent part:

Your faxed letter of October 2 attempts to negotiate some sort of exchange, viz: our agreement "to permit" your amended pleading in the dissolution matter as quid pro quo for your dismissing the Leon County litigation against, among others, the judge before whom the divorce action is pending. Sorry, Counselor; as I understand them, the rules of our profession don't allow for this sort fo thing. Apart from the fact that the position you want Judge Oftedal to adopt in the dissolution proceeding is itself without basis in law or fact, the Florida Bar takes a dim view of using litigation against a presiding judge to persuade him to rule favorably in a collateral matter. (Copy attached hereto as Exhibit "E")

The Florida Bar
October 16, 2008
Page 4

### ALLEGED VIOLATIONS

**The Letter.** Section 838.015, Fla. Stat., defines "Bribery" as an "offer" to any public servant, of any "benefit ... with an intent or purpose to influence the performance of any act ... within the official discretion of a public servant ... in performance of a public duty." Section 838.004, Fla. Stat., defines "Benefit" as "gain or advantage, or anything regarded by the person to be benefitted as a gain or advantage ...." For § 838.015 to apply, there is no requirement that the public servant actually accept or act upon the offer. See also § 838.016, Fla. Stat. (Unlawful compensation or reward for official behavior)

In the matter at hand, Ms. Garcia offered a "benefit" to Judge Oftedal, who qualifies as a "public servant," by offering to dismiss him from her client's lawsuit. (See Exhibit "D") This offer was intended to influence Judge Oftedal in the conduct and performance of his official public duties. Specifically, it sought to have him reverse an earlier ruling; to adjust procedures in order to allow an otherwise-defunct Counterclaim to go forward. The fact that Ms. Garcia brazenly raised this letter in proceedings before Judge Oftedal, and apparently handed a copy directly to the judge (who, it might be noted, is represented by counsel in the 2nd Circuit case) constitutes an aggravating factor. The fact that Ms. Garcia tendered the offer in writing and made no attempt to disguise her unwholesome objectives seems to demonstrate that she was ignorant of the wrongful nature of her conduct.

**Violations.** The aforementioned conduct by Inger Garcia, Esq., amounts to a violation of ss. 835.015, Fla. Stat. and 838.016, Fla. Stat. Violation of either section constitutes a felony. In addition, Ms. Garcia's conduct violates Rule 4-3.5(a) of the Rules Regulating The Florida Bar, which provides: "A lawyer shall not seek to influence a judge ... except as permitted by law or the rules of court." Ms. Garcia's Letter stands as conduct prejudicial to the administration of justice, in violation of Rule 4-8.4. Finally, Ms. Garcia's conduct may fall afoul of Rule 3-4.3 (lawyer shall not commit an act that is contrary to honesty

The Florida Bar
October 16, 2008
Page 5

and justice), and Rule 4-8.4(b)(lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

Florida cases dealing with attorneys who attempted to exert improper influence on public officials have imposed severe sanctions. See The Florida Bar v. Rendina, 583 So. 2d 314 (Fla. 1991)(disbarment warranted for attorney who attempted to bribe assistant state attorney); Florida Bar v. Rambo, 530 So. 2d 926 (Fla. 1988)(disbarment warranted for bribing county commissioner in exchange for favorable outcome in rezoning procedure); The Florida Bar v. Cruz, 490 So. 2d 48 (Fla. 1986)(disbarment warranted for conspiracy to bribe and bribery of federal official); The Florida Bar v. Lechtner, 666 So. 2d 892 (Fla. 1996)(disbarment warranted for bribing judge and other felonies). According to the Court in The Florida Bar v. Riccardi, 264 So. 2d 5 (Fla. 1972):

> In our view bribery is a particularly noxious ethical failure under the Code of Professional Responsibility, because it not only involves a breach of the individual attorney's public trust as a member of the legal profession, but also represents an attempt by the offending lawyer to induce a third party to engage in fraudulent and corrupt practices. Such conduct strikes at the very heart of the attorney's responsibility to the public and profession. Id. at 6.

**The Lawsuit.** The action filed by Wife in the 2nd Circuit - now being litigated by Inger Garcia, Esq. on Wife's behalf - is frivolous on its face. (Cf. Exhibit "B;" full copies of pleadings will be provided upon request) Defendant Judge Richard Oftedal has absolute judicial immunity with respect to actions he has taken in the pending 15th Circuit case. E.g., Berry v. State, 400 So. 2d 80 (Fla. 4th DCA 1981). Ms. Garcia has been placed on notice of the foregoing prohibition. Nevertheless, she has refused to dismiss Judge Oftedal absent some favorable ruling that would allow her to proceed with a Counterclaim in the 15th Circuit case.

The Florida Bar
October 16, 2008
Page 6

No justification will support suing a judge over supposed errors or irregularities in a pending case. Indeed, such an undertaking can have no purpose other than to exert improper pressure and influence. The improper purpose is confirmed by the "Notice of Intention to Depose Judge Oftedal." Among other things, this document purports to require Judge Oftedal to testify with respect to his record on divorce lawsuits, his oath of office, his "*repeated and persistent refusal to address the constitutional issues* raised in his courtroom," and conflicts of interest. (Emphasis added, see Exhibit "C") The malicious intent behind Wife's action is likewise confirmed by the Letter she has circulated, described in the previous section of this Complaint.

**Violations.** Ms. Garcia's actions violate Rule 4-3.1 of the Rules Regulating the Florida Bar. This rule forbids a lawyer from bringing or defending a proceeding "unless there is a basis in law or fact for doing so that is not frivolous." Attempts to embarrass, influence, or pressure a judge in the performance of his duties, do not qualify as valid bases for litigation. The Oath of Admission to The Florida Bar requires applicants to solemnly swear to "maintain the respect due to Courts of Justice and Judicial Officers ...." Rule 4-8.4 prohibits a lawyer from engaging in "conduct in connection with the practice of law that is prejudicial to the administration of justice ...." Various cases have imposed sanctions on counsel for disparaging conduct directed toward judges, including: The Florida Bar v. Morgan, 938 So.2d 496 (Fla. 2006); Florida Bar v. Clark, 528 So.2d 369 (Fla. 1988); In re The Florida Bar, 284 So. 2d 686 (Fla. 1973). In addition, Ms. Garcia appears to have violated Rule 4-3.4, Fla. Stat., which forbids lawyers from making a frivolous discovery request.

**WITNESSES**

Natalie Garland, Esq.
1907 Commerce Lane
Jupiter, FL 33468
Telephone: 561-743-3708

The Florida Bar
October 16, 2008
Page 7


Kathy Garcia-Lawson
2620 Natures Way
Palm Beach Gardens, FL 33410
Telephone: 561-624-8725

Judge Richard L. Oftedal
North County Courthouse
3188 PGA Blvd.
Palm Beach Gardens, FL 33410

Inger Garcia, Esq.
3389 Sheridan Street
Suite 546
Hollywood, FL 33021
Telephone: 954-524-0506

Defense counsel upon whom Inger Garcia, Esq. served the
Letter:

> Patricia A. Lynch, Esq.
> Bush, Augspurger & Lynch, P.A.
> 411 E. Jackson Street
> Orlando, FL 32801
> Telephone: 407-422-5319
> (Attorney for Defendant, Natalie Garland, Esq.)
>
> Daniel S. Dearing, Esq.
> Office of the Attorney General
> The Capitol - PL 01
> Tallahassee, FL 32399-1050
> Telephone: 850-414-3300
> (Attorney for Defendants Hon. Bill
> McCollum, Hon. Bob Butterworth &
> Hon. Richard L. Oftedal)
>
> George Waas, Esq.
> Office of the Attorney General
> The Capitol - PL 01
> Tallahassee, FL 32399-1050
> Telephone: 850-414-3662

The Florida Bar
October 16, 2008
Page 6

## CONCLUSION

Ms. Garcia's misconduct warrants severe penalties -
including disbarment. The fact that Ms. Garcia would maintain
a baseless lawsuit against the judge who is presiding over her
client's divorce case is, in and of itself, sufficient cause
for sanctions. Ms. Garcia's Letter, which offers to dismiss
the judge as a defendant, in exchange for concessions within
the divorce case, moves her transgressions into the realm of
criminal wrongdoing. When assessing this ill-conceived
attempt to gain leverage over a sitting judge, The Florida Bar
should be guided by the welfare of the public and public
perceptions regarding the integrity of the judicial system.

Under penalties of perjury, I declare that I have read
the foregoing document and that to the best of my knowledge
and belief the facts stated in it are true.

CHARLES R. BONING

Under penalties of perjury, I declare that I have read
the foregoing document and that to the best of my knowledge
and belief the facts stated in it are true.

EARL K. MALLORY

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 502005DR001269XXXXNB
FAMILY DIVISION "FH"

IN RE: THE MARRIAGE OF
JEFFREY P. LAWSON,
    Petitioner/Husband,

and

KATHY ANN GARCIA-LAWSON,
    Respondent/Wife.

_____/

## ORDER DENYING WIFE'S MOTION FOR
## LEAVE TO AMEND THE COUNTER-CLAIM

THIS MATTER comes before the court upon Wife's Motion for Leave to
Amend the Counter-Claim filed on February 27, 2008 (the "Motion"). For the
reasons that follow, the court finds that the Motion should be denied.

### I. PROCEDUREAL HISTORY AND BACKGROUND

By way of background, Husband's Petition for Dissolution of Marriage was
filed on February 1, 2005.   On March 29, 2005, Wife filed her initial Counter-
Petition in which she set forth a single count seeking Separate Maintenance.
More than three years have passed and this case has yet to be tried.   In the
interim, Wife has resisted every attempt to have this case heard on the merits
and has successfully engaged in delay tactics designed to unnecessary prolong
the litigation and to stymie Husband in his efforts to have his long-awaited day in
court.   Indicative of these efforts is a court file that already exceeds six volumes
and 267 separate docket entries. Wife has changed counsel on four occasions[1]
and has moved to disqualify both the previously assigned trial judge and the

---

[1] Wife's current attorney filed a motion to withdraw on May 15, 2008 (docket entry #250)   That motion,
together with a motion for temporary relief, was later withdrawn on June 12, 2008 (docket entry #254), the
day of the specially set hearing.

**EXHIBIT**

" A "

Page 2
Case No 502005DR001269XXXXNB
Lawson v Lawson

undersigned judge. She has been sanctioned for failure to follow court orders and has been found to be in contempt. Wife has been dilatory in providing discovery and has twice unsuccessfully petitioned the Fourth District Court of Appeals to contest prior rulings of the court. Trial has previously been set several times, only to have been continued upon the motion of Wife or her newly retained counsel.

This is not Wife's only motion to amend. On June 7, 2007, this court permitted Wife to amend her affirmative defenses and to add counter claims. Thereafter, on July 18, 2007, the court dismissed Counts II, III, and IV of Wife's Amended Counter Petition, all of which sounded in tort. Wife's claim for Separate Maintenance was allowed to stand and Wife was granted 10 days to file an amended pleading. Rather than timely file an amended pleading, Wife failed to take any action until February 27, 2008, when her current attorney sought leave to file this most recent amendment to the Counter-Petition. The amendments ask for declaratory and injunctive relief in an attempt to declare Chapter 61, Florida Statutes, unconstitutional.

One item missing from the docket sheet is Wife's Motion to Dismiss as a Sanction for Fraud. This 59 page motion, aside from being a largely incoherent and prolix pleading, makes serious ethical and criminal charges against nearly everyone associated or even tangentially connected with the litigation, but most particularly Husband's attorney and her law firm, including allegations of perjury, conspiracy, and *ex parte* conversations with the prior trial judge assigned to this case. Given the gravity of these allegations, a three hour specially set hearing on the motion was coordinated between the court and all counsel.

When counsel for the Husband informed the court that the fraud motion had not yet been docketed, Wife's attorney appeared noticeably surprised and advised the court that she had personally "dropped off" the original pleading with the clerk, but promised that she would immediately file another copy. Curiously,

the certificate of service also averred that a true copy had also been furnished to the clerk's office.  Not only did Wife's counsel not file a copy with the clerk as promised, she later served a motion seeking to reset the specially set hearing wherein she stated for the first time that the fraud motion was served to opposing counsel but never filed with the court.  Counsel for the Husband rightfully inquires as to why the Wife's Motion to Dismiss as a Sanction for Fraud upon the Court would be served on opposing counsel, provided to the court, and set for hearing, but never filed with the clerk.  The end result of the Wife's actions was to again further delay these proceedings and prevent the case from being at issue so that it might finally be set for trial.  To this date, the fraud motion remains unfiled.

It also appears that Wife was directly responsible for the cancellation of the court's most recent attempt at mediation in this case.  Prior efforts at obtaining meaningful mediation all ended in failure due to conduct or circumstances directly attributable to Wife.  As a result, this court previously waived its standing order requiring mediation.  However, at the insistence of Wife's current counsel and over the objection of Husband's attorney, the court was persuaded that another attempt at a good faith mediation was warranted.  The court allowed Wife to select a mediator of her own choosing and a date was mutually agreed to and coordinated in advance between the parties and the mediator.  Shortly before the scheduled mediation date the mediator advised the parties that she was no longer willing to mediate this case.  While the circumstances surrounding her decision are not entirely clear, it apparently occurred following an unsolicited telephone call to the mediator from the Wife.  This is yet another example of Wife interjecting delay into these proceedings.

It is against this factual backdrop that the court considers the Wife's Motion.

Page 4
Case No 502005DR001269XXXXNB
Lawson v Lawson

## II. LEGAL ANALYSIS

The court is not unmindful of the liberality normally accorded motions to amend. Bradham v. Hayes Enterprises, Inc., 306 So.2d 568 (Fla. 1st DCA 1975). However, it has long been recognized that "this 'liberality' gradually diminishes as the case progresses to trial." Versen v. Versen, 347 So.2d 1047 (Fla. 4th DCA 1977). There is, after all, a time "where each party is entitled to some finality." Noble v. Martin Memorial Hospital Assoc., 710 So.2d 567, 568 (Fla. 4th DCA 1998). That time is now.

Wife argues that the court is compelled to grant her Motion pursuant to the holding in Greene v. Well Care HMO, Inc., 778 So.2d 1037 (Fla. 4th DCA 2001). Greene ruled it an abuse of discretion for a trial judge to deny leave of a party to amend unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile. Id. at 1041.

As set forth in great detail above, Wife has repeatedly acted in a manner to prevent this case from going to trial. Given that the case has languished on the docket for more than three years, her efforts so far have been successful. It is an abuse of the amendment process to invoke Rule 1.190 in order to perpetuate delay. In this case, Wife was granted leave to amend previously and when portions of her amended counter-petition where dismissed, she was granted additional time in which to again file another amended pleading. From the onset of the litigation, Wife has been outspoken in her view that Florida's statutory no-fault divorce statute was constitutionally infirm, but waited until the eve of setting this case for trial to seek leave to amend her counter-petition to make such a claim.

The prejudice to the Husband is obvious. His life has effectively been put on hold for the past three years as his efforts to obtain a ruling on his petition for dissolution have stalled. The delay has not only cost him time but money as well. Husband's counsel recently indicated he has spent in excess of $100,000 in fees

Page 5
Case No. 502005DR001269XXXXNB
Lawson v. Lawson

to date defending this action. If the Wife is allowed to amend her pleadings at this late date, the case will no longer be at issue and the July 30, 2008 trial will be delayed indefinitely, possibly for a year or longer, as new parties will have to be served, answers filed and additional discovery taken. Costs and fees can be expected to escalate beyond the parties' limited means. If the time standards established by the Florida Supreme are to be given anything more than lip service, this Motion must be denied. See Rule 2.250, Fla. R. Jud. Admin. (Contested domestic relation cases should be completed within 180 days from filing).

While this court offers no opinion as to the merits of the proposed amendments, the court notes that the constitutional issues raised by Wife appear to have been previously addressed by the Florida Supreme Court in the landmark case of Ryan v Ryan, 277 So.2d 266 (Fla. 1973) and its numerous progeny, wherein the Court upheld the constitutionality of Florida's 'no-fault' divorce law, including the abolishment of certain defenses, including the 'clean hands principle'. If that is the case, the amendment would indeed be futile.

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that Wife's Motion for Leave to Amend the Counter-Claim is DENIED.

DONE AND ORDERED this 19th day of June, 2008, in Chambers in Palm Beach Gardens, Florida.

SIGNED AND DATED

JUN 1 9 2008

RICHARD L. OFTEDAL

Richard L. Oftedal
Circuit Judge

Copies furnished: EBobofog
Natalie M. Garland, Esq., 1907 Commerce Lane, Suite 104, Jupiter, Florida 33488
Inger M. Garcia, Esq., 533 N.E. 3rd Avenue, Ground Floor – Suite 2, Fort Lauderdale, Florida 33301

Confidential

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA

Kathy Ann Garcia-Lawson,
    Plaintiff,

    v.

Jeffrey P. Lawson;
William "Bill" McCollum, Attorney General
    of the State of Florida;
Robert A. Butterworth, Secretary of the Florida
    Department of Children and Families;
The Honorable Richard L. Oftedal, Division FH,
    Fifteenth Judicial Circuit in and for
    Palm Beach County, Florida;
Natalie M. Garland of the Mallory Law Group;
    Defendants.

Cause Number:

Trial-by-Jury
Demanded as of Right

## COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

Comes now Plaintiff KATHY ANN GARCIA-LAWSON, and moves this Court

for Declaratory and Injunctive Relief under Florida Statute §86.011 and under both the

Florida and United States Constitutions, presenting to the Court this Condition Precedent

under Fla.R.Civ.P. 1.120(c) that must be addressed before any subsequent, dependent, or

ancillary legal matter related to the dissolution of the parties' marriage, showing the

Court as follows:

A declaration is sought that the current Florida laws as they relate to "no-fault" or

"unilateral" divorce and labeled in the statutes as "Chapter 61: Dissolution of Marriage"

are unconstitutional because they lack a definition of "irretrievable breakdown" and

remove the defenses at law to protect a fundamental liberty and basic civil right.

**EXHIBIT**

Lawson Complaint for      **B**      tive Relief – page

SEP-29-2008  12:52      mallory                                407 849 1821    P.02



IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA

Kathy Ann Garcia-Lawson,
    Plaintiff,

    v.

                               Cause Number:
Jeffrey P. Lawson;                     08CA2304
William "Bill" McCollum, Attorney General
    of the State of Florida;
Robert A. Butterworth, Secretary of the Florida
    Department of Children and Families;
The Honorable Richard L. Oftedal, Division FH,
    Fifteenth Judicial Circuit in and for
Palm Beach County, Florida;
Natalie M. Garland of the Mallory Law Group;
    Defendants.

## NOTICE OF INTENTION TO DEPOSE JUDGE OFTEDAL

COMES NOW, Plaintiff Kathy Garcia-Lawson, gives Notice of Intention to

Depose Defendant Honorable Richard L. Oftedal to testify as a fact witness regarding the

following:

1. On July 16, 2008 Plaintiff Kathy Lawson filed a Complaint for Declaratory and

Injunctive Relief in the Circuit Court of the Second Judicial Circuit, in and for Leon

County, Florida, which was registered by the Leon County Clerk as:

> 37 2008 CA 002304 GARCIA LAWSON, KATHY ANN vs LAWSON,
> JEFFREY P, William McCollum, et. al

2. In the above Leon County case, the Hon. Richard L. Oftedal was named as a

defendant.

**EXHIBIT**

"C"

3. The Hon. Richard L. Oftedal was named as a defendant in his official capacity both as sitting judge and as a representative of the Fifteenth Judicial Circuit in and for Palm Beach County.

4. In the Leon County case, Defendant Hon. Richard L. Oftedal will be called to testify regarding his personal knowledge and experience related to but not limited to the following areas:  his record on judicially denying divorce lawsuits, as elaborated in Plaintiff's Complaint (hereinafter as "Pl. Comp.") ¶ ¶ 10, 51-54, 61-62, 85-86, 102, 105, 107, 108-109, and 113-115.

5. Defendant Hon. Richard Oftedal will be asked to testify about his oath of office in which he is sworn to uphold the Constitution.

6. Defendant Hon. Richard L. Oftedal will be asked to testify about his repeated and persistent refusal to address the constitutional issues raised in his courtroom in the Lawson v. Lawson case (*See* Pl. Comp. ¶¶ 10, 14, 29-30, 34-36, 39 et. seq., 101-102, 105, and 129-130).

7. Defendant Hon. Richard L. Oftedal will be asked to testify about any conflict of interest that might impede him from holding the scales of justice squarely in addressing the constitutionality of Florida statutes and procedures, including any direct conflict of interest that adjudging the constitutionality of the statutes would present to the cases docketed within his court. (*See* Pl. Comp. ¶¶ 11, 12, 36, 39 et. seq., 53, 85-86).

8. Defendant Hon. Richard L. Oftedal will give testimony concerning the constitutionally-compliant procedures that can be used in a Florida divorce action that will lead to a judicial denial of the divorce. (*See* Pl. Comp. ¶¶ 41, 48, 49 et. seq., 50-62, 66-77, 85-86, 89-109, 111-117, 123, 126-130, 131-138).

Received Fax :           Sep 29 2008 12:48PM     Fax Station :    MALLORY LAW GROUP         p . 4

SEP-29-2008  12:52      mallory                          407 849 1821     P.04

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy has been furnished by

_4.S. Mail_ this _26_ th day of _September_, 2008, to:

Patricia A. Lynch
Bush, Augsburger & Lynch, P.A.
411 E. Jackson Street
Orlando, Florida 32801
(407) 422-5319
(407) 849-1821 FAX
Attorney for Defendant Natalie M.
Garland of the Mallory Law Group

Daniel S. Dearing
Office of the Attorney General
The Capitol – PL 01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 488-4872 FAX
Attorney for Defendants Hon. Bill
McCollum, Hon. Bob Butterworth &
Hon. Richard L. Oftedal

Jeffrey P. Lawson, pro se Defendant
c/o Natalie Garland
Mallory Law Group
1907 Commerce Lane, Suite 104
P.O. Box 8858
Jupiter, Florida 33468-8858
Tel: 561-743-3708
Fax: 561-743-3729
E-Mail: nmgmig@bellsouth.net
_Hand Delivered_

THE LAW OFFICE OF INGER M. GARCIA, ESQ.

INGER M. GARCIA, ESQ.
2506 NE 30th Street
Ft. Lauderdale, Florida 33306
Phone: 954-894-9962
Fax: 954-446-1635
Fla. Bar No. 106917
Inger13@aol.com

Inger M. Garcia, Esq.
2506 NE 30th Street
Ft. Lauderdale, Florida 33306
954-894-9962

October 2, 2008

ALL PARTIES & THEIR ATTORNEYS to Cases Relating to
the Marriage of Jeffrey P. Lawson & Kathy Garcia-Lawson
for Circulation at October 2, 2008, in Judge Richard L. Oftedal's
Court in North Palm Beach County, 15th Judicial Circuit

Dear Sirs and Madams:

All the Wife-Defendant Kathy Ann Garcia-Lawson has always wanted is "her day in
court" regarding the question of the constitutionality of no-fault divorce as a creature of
state-licensed marriage. She has now framed complaints in the Second Circuit in Leon
County and the United States District Court for the Southern District of Florida.

It is Wife's position, and it seems undeniably true, that it is disingenuous, utterly unfair,
and a complete waste of time to move forward with this (present case), this dissolution
procedure, until and unless she has had a full and fair opportunity to litigate present her
constitutional questions regarding the statutes which frame regulate Florida divorce &
marriage.

Even if you think that Wife has only a 1% chance of overturning the Florida divorce and
marital regime, you must agree that Wife then has a 1% chance of rendering all other
proceedings in this 15th Judicial court illegitimate and illegal.

Plaintiff Kathy Ann Garcia-Lawson hereby submits and proposes the following:
streamlining and downscaling of this litigation, which is now spread over and through
three courts: We agree that Judge Oftedal allow the leave to amend, and thereby allow
Kathy Ann Garcia-Lawson to consolidate ALL of her defenses and contentions into a
single counterclaim and a set of third-party claims arising from the same transactions and
occurrences in this court. All other cases are dismissed. If Kathy is allowed a full-and-
fair trial of all these issues here in the Fifteen Judicial Circuit, this case alone will
eventually become res judicata and Kathy will have tried her case in the most appropriate
and legitimate of formats.

To deny Kathy Ann Garcia-Lawson's right freely and fully to amend her answer,
counterclaim, and third-party claims in this court has led to the needless multiplication of
judicial proceedings. We, along with Judge Oftedal, now have the power in our hands to
eliminate the need for three parallel but related actions. Judge Oftedal has the ability to
cure Kathy Lawson's complaints against each of us for her denial of due process by
allowing the amendment.

*Tender of Offer to Consolidate & Streamline Civil Rights &
Constitutional Litigation into single cause in 15th Judicial Circuit*

**EXHIBIT**

D

Further, Judge Oftedal, will no longer be named as a defendant in any case as this will allow this case to proceed here in the Fifteenth Judicial Circuit in and for Palm Beach County.

Respectfully tendered,

Inger Garcia, Esq.
2506 NE 30th Street
Fort Lauderdale, Florida 33306
Phone: (954) 894-9962
Fax:   (954) 446-1635
Inger13@aol.com

Cc:   George Waas, via facsimile:                              (850) 488-4872
      Daniel S. Dearing, via facsimile:                       (850) 488-4872
      Patricia A. Lynch, via facsimile:                       (407) 849-1821
      Jeffrey P. Lawson & Natalie Garland, via facsimile: (561) 743-3729

*Tender of Offer to Consolidate & Streamline Civil Rights &*                     2
*Constitutional Litigation into single cause in 15th Judicial Circuit*

Received Fax :        Oct 06 2009 1:59PM        Fax Station :   MALLORY LAW GROUP        P. 2

OCT-06-2008   13:20          mallory                    407 849 1821    P.02



**BILL McCOLLUM**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

OFFICE OF THE ATTORNEY GENERAL
State Programs Litigation Section

DANIEL S. DEARING
Senior Assistant Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3300      Fax (850) 488-4872
http://www.myfloridalegal.com

October 2, 2008

Inger M. Garcia, Esq.
2506 N.E. 30th Street
Ft. Lauderdale, FL 33306

Re:   Kathy Ann Garcia-Lawson vs. Bill McCollum, et al
      Second Judicial Circuit Case No. 08 CA 2304

Dear Ms. Garcia:

Thank you for your faxed letter dated October 2.

I am frankly surprised. As we discussed during our telephone conversation on Monday, it is my position that your complaint pending in Leon County against Attorney General McCollum, Secretary Butterworth, or his successor Secretary Sheldon, and Judge Oftedal, is completely without basis in law or fact. I tried to explain to you "lawyer to lawyer" the reasons for my concern. At your request for time to consult with your client about dismissing the case, I agreed to do nothing further regarding a sanctions motion until after Monday, October 6.

Your faxed letter of October 2 attempts to negotiate some sort of exchange, viz: our agreement "to permit" your amended pleading in the dissolution matter as quid pro quo for your dismissing the Leon County litigation against, among others, the judge before whom the divorce action is pending. Sorry, Counselor; as I understand them, the rules of our profession don't allow for this sort of thing. Apart from the fact that the position you want Judge Oftedal to adopt in the dissolution proceeding is itself without basis in law or fact, the Florida Bar takes a dim view of using litigation against a presiding judge to persuade him to rule favorably in a collateral matter.

You should be aware that constitutionality of Florida's no-fault divorce law was affirmed by the Supreme Court 35 years ago in Ryan v. Ryan, 277 So2d 266 (Fla. 1973). I don't expect Judge Oftedal to give your proposal any consideration whatsoever, let alone to accept the invitation to overrule the High Court on this.

**EXHIBIT**

E

RECEIVED FAX :         OCT 06 2008 1:15PM     Fax Station :   MALLORY LAW GROUP         P. 3

OCT-06-2008   13:21          mallory                              407 849 1821     P.03

My telephone call to you on Monday was to suggest the wisdom of taking a nonsuit; dismissing the Leon County case with prejudice because it is simply not the way for you to proceed in this matter. We discussed various reasons why. I'm afraid your letter now compounds the problem I attempted to outline then.

In the event that you do not dismiss this action immediately and with prejudice, please consider this letter notice of our intention to move for §57.105 attorney fees and costs against you and your client, a motion which I will file on Tuesday.

Sincerely,

Daniel S. Dearing
Senior Assistant Attorney General

cc:    Richard Burton Bush, Esq.
       ✓Patricia A. Lynch, Esq.

2

**MALLORY LAW GROUP**
ATTORNEYS AT LAW
1907 COMMERCE LANE - SUITE 104
P.O. BOX 8858
JUPITER, FLORIDA 33468-8858
TELEPHONE (561) 743-5788
FACSIMILE (561) 743-3729

EARL K. MALLORY*
CHARLES R. BONING
NATALIE M. GARLAND**
K. JOY MATTINGLY
* ALSO ADMITTED TO PRACTICE IN COLORADO
** ALSO ADMITTED TO PRACTICE IN PENNSYLVANIA

ANNELIESE M. KOEHLER-GARDNER, ACP
PARALEGAL

October 30, 2008

Theodore P. Littlewood, Jr., Esq.
Bar Counsel
The Florida Bar
651 East Jefferson Street
Tallahassee, FL 32399-2300

Re: Inger Garcia - RFA #09-7844

Dear Mr. Littlewood:

Thank you for your correspondence of October 27, 2008, and
your telephone call regarding the two Bar Complaints. I understand
that the two complaints will be combined into one complaint file.

I have executed the oath contained in your letter, and have
enclosed the same.

As I expressed in the complaint, I will be happy to provide a
copy of the entire 57-page motion that is the subject of the second
Complaint. I believe that The Florida Bar would benefit by viewing
Ms. Garcia's writings in context.

Should you have any questions regarding the foregoing, please
do not hesitate to give me a call.

Very truly yours,

EARL K. MALLORY
ekmlaw@bellsouth.net

EKM/
enclosure
H \CLIENTS\FAMILY\Lawson\Bar Materials\Littlewood01.wpd



# THE FLORIDA BAR

**651 EAST JEFFERSON STREET**
**TALLAHASSEE, FLORIDA 32399-2300**

JOHN F. HARKNESS, JR.
EXECUTIVE DIRECTOR

(850) 561-5600
www.FLABAR.ORG

October 27, 2008

Mr. Earl Kenneth Mallory
1907 Commerce Lane, Ste. 104
P.O. Box 8858
Jupiter, FL 33468-8858

Re:   Ms. Inger Michelle Garcia; RFA No. 09-7844

Dear Mr. Mallory:

Your inquiry concerning the conduct of the above member of the Bar has been analyzed and has been determined to be a matter which warrants further investigation. The Supreme Court of Florida has adopted rules that require the allegations be signed and under oath. In order to comply with this rule you must sign the oath below and return it to us by **November 3, 2008** before we can proceed with an investigation.

Under penalty of perjury, I declare that the facts contained in the inquiry submitted to The Florida Bar concerning Ms. Garcia are true, correct and complete.

_____          10/30/08
Mr. Earl Kenneth Mallory                          Date

If you do not complete and return the oath form to us, we may be unable to proceed with the investigation. A copy of the rule imposing this obligation (3-7.3(c)) may be found on the Bar's web site at www.floridabar.org.

Also, if you have documents that you feel support your allegations, please provide copies of them when you return the oath.

Thank you for your cooperation.

Sincerely,

Theodore P. Littlewood Jr., Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707

# *Exhibit D:*
# *Transcripts of Hearings and Telephone Conversations with 15th Judicial Circuit Court, Palm Beach County, Florida*

## AFFIDAVIT OF KATHY LAWSON

STATE OF FLORIDA       )
                         ) SS
COUNTY OF PALM BEACH  )

BEFORE ME, the undersigned, personally appeared KATHY GARCIA-LAWSON, who after being duly sworn under oath by me, deposes and says:

1. My name is Kathy Garcia-Lawson and I am over the age of 18 years.

2. My current address is 2620 Natures Way, Palm Beach Gardens, FL 33410.

3. On Thursday, October 22, 2009, at or about 11:50 a.m., Erin Brandt of Judge Oftedal's office called and left a voice mail message on my cell phone, (561) 670-4815.

4. On Thursday, October 22, 2009, at or about 11:52 a.m., Erin of Judge Oftedal's office called and left a voice mail message on my home phone, (561) 624-8725

FURTHER AFFIANT SAYETH NAUGHT.

_Kathy A. Garcia-Lawson_
KATHY GARCIA-LAWSON

The foregoing document was acknowledged before me, an officer duly authorized in the State and County to take acknowledgments, this 27th day of October, 2009, by KATHY GARCIA-LAWSON, who:

[ ] is personally known to me; or
[✓] has produced FL DL L250-5M-58544-0 as identification; and who
[✓] did take an oath
[ ] did not take an oath
and who executed the within document, and who acknowledged the within document to be freely and voluntarily executed for the purposes therein recited.

_Cheryl R. Daniels_
Notary Public, State of Florida
_Cheryl R. Daniels_
Print Name
My Commission Expires: 7|17|2011

CHERYL R. DANIELS
MY COMMISSION # DD 676861
EXPIRES: July 17, 2011
Bonded Thru Notary Public Underwriters

CERTIFICATE OF OATH

STATE OF FLORIDA        )
                        )  SS
COUNTY OF PALM BEACH    )

 I, Cheryl R. Daniels, Transcriber, hereby certify that I was authorized to and

did transcribe two (2) telephonic voice mail recordings for KATHY GARCIA-

LAWSON, and the foregoing transcript is a true and complete record.

 I further certify that I am not a relative, employee, attorney, or counsel of ay

of the parties, nor am I a relative or employee of any of the parties' attorney or

counsel connect with the action.

  Dated this 27th day of October, 2009.

  Cheryl R. Daniels, Transcriber
  A-1 Express Transcription Services
  Tel:  (561) 842-3138

**Voicemail Message Left on Cellular Phone Number**

**561 624-3931 received Thursday, October 22, 2009, at or about 11:50 am**

Yes, hi Mrs. Lawson, this is Erin with Judge Oftedal's office, I received your new motion um and your request for an emergency telephone hearing. Um, the judge is not in tomorrow and, therefore, he's the only one that can hear this motion so he just ah advised that he will hear this matter on November 2nd umm (pause), unless (pause) it can be heard prior to the trial which I understand Mr. Lawson is going to be out of town next week so um, I just want to advise you that the judge will address it November 2nd at the time of trial unless something can be arranged for next week ah with Mr. Lawson um to um have this matter heard um prior to the 2nd. Um, if you have any further questions, 624-6593, but as far is tomorrow, Judge Oftedal will not be available and he is the only one that can address this issue. Um, if you have any questions, 624-6593. Thank you.

**Voice Mail Message Left on Home Phone**

**(561) 624-8725 Thursday, October 22, 2009 at or about 11:52 a.m.**

This is Erin with Judge Oftedal, I don't know if I I reached getting Mrs. Kathy

Lawson, I have two numbers for her, um, this is Erin with Judge Oftedal. I just

wanted to let you know that Judge Oftedal, um, that he reviewed your motion, but

and I remembered or he reminded me that he is not in tomorrow, he is out and

nobody else will be available to hear this matter so the judge said that he will just

address it at the time of the trial on November 2nd.

My number is 624-6593. Thank you.

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

**ORIGINAL RECEIVED FOR FILING**

**SEP 3 0 2009**

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

**CLERK
CIRCUIT CIVIL DIVISION**

2005DR001269XXXXNB
FAMILY DIVISION "FH"

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

**NOTICE OF INTERVENTION IN SUPPORT OF**
**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND**
**OTHERWISE TO CHALLENGE**
**THE CONSTITUTIONALITY OF**
**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,**
**AND JURISDICTION AFTER JUDGE KENNETH MARRA'S**
**DISMISSAL pursant to _YOUNGER v. HARRIS_, 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her in this case to demand an answer to one core question: are the Domestic Relations Courts of the State of Florida really capable of evaluating the constitutional violations of fundamental rights to life, liberty and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought for several years now (at least) to obtain answers to her questions concerning the constitutionality of various provisions of the Florida Dissolution and Domestic Relations Codes (especially but not limited to Chapters 61 and 741 of the Florida Statutes). KATHY ANN GARCIA-LAWSON has also challenged the qualities of substantive and procedural due process protection available in the Florida

_Notice of Intervention in Support of Constitutional Questions after_
_Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)_                    1

92 of 193

Domestic Relations and Dissolution Courts and proceedings, and asserted that neither the statutes on their face, nor the courts as administrators of the processes established by statute, can withstand strict constitutional scrutiny under the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution.

## INTERVENOR'S PURPOSE AND NEED TO INTERVENE

Intervenor submits that the case before the Court is (in the aftermath of Judge Marra's decision earlier this year) in purpose, context, and consequences one of first impression. In that case, the Federal Plaintiff (State Dissolution case Respondent Wife) Dr. KATHY ANN GARCIA-LAWSON has been directed, instructed, and in effect appointed, commanded, and delegated by the United States District Court for the Southern District of Florida to raise all constitutional issues concerning the validity of the Florida Dissolution and Domestic Relations Codes before this present court.

The undersigned Intervenor accordingly asserts that Judge Marra has (as if by way of a "challenge" to prove or disprove the basic premise of *Younger v. Harris*) given to Dr. Kathy Ann Garcia-Lawson a unique authority and invitation to demand a comprehensive judicial review of the constitutionality of the aforementioned Florida statutes and the Domestic Relations courts created for the administration thereof. Intervenor approaches this Court to act in support and concert of Dr. Garcia-Lawson, and submits that Judge Marra's action has created an unprecedented and unequaled

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

2

93 of 193

opportunity to seek or obtain effective judicial review of these questions in any other forum. Basically, the Domestic Relations Courts in the State of Florida operate as a welfare "protection racket", warning "terrible things will happen to you and your children if you do not accept our jurisdiction and comply with our norms and orders." Intervenor, like so many in this and every state, has until now been given no choice about accepting Domestic Relations "protection" or not.

Judge Kenneth A. Marra has in form, function, and practical effect challenged Dr. Kathy A. Garcia-Lawson to initiate and maintain here a "trial-by-ordeal" regarding the validity of the Domestic Relations "Protection Racket" Courts and laws or regime under colour of law imposing and "enforcing" the same. Intervenor submits that the time has come for the Domestic Relations to step back and to allow people to protect themselves, their families, and their children as individuals, reserving unto themselves all their rights and powers not expressly granted in the original Constitution and Bill of Rights (and ever since).

It is time for the State's "Child-and-Family" Protection Racket to end, once and for all, and Intervenor wants to stand shoulder-to-shoulder beside Dr. Kathy Ann Garcia-Lawson in her crusade to make this happen.

In other words, Intervenor cannot protect his or her interest in this constitutional challenge except by and through

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*     3

94 of 193

intervention.   Intervenor further alleges that because of the litigation history of this case, a unique set of circumstances, a unique opportunity, and a unique intersection and nexus of legal and factual circumstances has now occurred, and s/he cannot raise his or her own challenges to the constitutionality of the Domestic Relations and Dissolution regimes in Florida so well or so appropriately in any other case.

The undersigned intervenor alleges that he or she is a lawful resident of the state of Florida for all of the six months preceding the filing of this notice of intervention, and that s/he is accordingly subject to the Domestic Relations and/or Dissolution jurisdiction of the State of Florida, either by virtue of being married while resident in this state, having once been married while resident in this state, actually subject to ongoing continuing jurisdiction in this state, or else have minor children under the age of 18 in the state of Florida.

Intervenor is particularly concerned that the Domestic Relations Courts of the State of Florida have been given unconstitutional and amoral powers in determining the custody, care, and nurturing of the children of Florida, and that the resultant context and platform for State intervention in private family and individual life is among the most insidious and un-American, socialistic and communist-inspired conspiracies in the history of the world.

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under* <u>*Younger v. Harris*</u>*, 401 U.S. 37 (1971)*            4

**LAWSON LITIGATION HISTORY and**
**JUDGE MARRA'S MANDATE TO FLORIDA STATE COURTS**

What the Florida Second Circuit Court in and for Leon County, Florida, and the United States District Court for the Southern District of Florida, Palm Beach Division, have told the people of Florida, including but not limited to this intervenor and KATHY ANN GARCIA-LAWSON, is that NO COURT OTHER THAN THIS FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY is better qualified or more appropriate to resolve constitutional questions concerning the (1) the legitimacy and jurisdiction of this Domestic Relations court, and all other Domestic Relations Courts in Florida, (2) the constitutionality of Florida Statues, Chapters 61 et seq. and 741 et seq, among others when evaluated under the First, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States, and (3) the status substantive and procedural due process afforded by the Florida Domestic Relations Courts and all Florida Courts exercising jurisdiction of marital and familial matters pursuant to those laws.

Judge Kenneth Marra in the Federal District Court in particular opted to abstain from enjoining the present divorce action under the doctrine articulated by the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971) because the United States District Judge was not convinced that the circumstances required by *Dombrowski v. Pfister*, 380 U.S. 479 (1965) had been met

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under* <u>*Younger v. Harris*</u>*, 401 U.S. 37 (1971)*          5

96 of 193

or even alleged in Wife's pleadings to justify Federal Court intervention in ongoing state court proceedings. The Federal Court "dismissed [Kathy Ann Garcia-Lawson's Complaint filed in 2008] with prejudice" but it is curious to imagine what "abstention with prejudice" can really mean.

Respondent Kathy Ann Garcia-Lawson may not have alleged sufficient facts to support a federal injunction against state action under the *Dombrowski v. Pfister* model. However, the undersigned intervenor comes before this Court to assert that Garcia-Lawson's failure to convince the Federal District Court does not necessarily mean that the Florida State Courts were not and are not still pervasively biased and politically and/or economically committed to a corrupt system of marital and dissolution laws. In fact, the overwhelming anti-constitutional injustice inflicted on the people, including the intervenor, by the State of Florida through its Domestic Relations Court is analogous to the anti-civil rights craze which gripped the legal establishment in Louisiana in the late 1950s and early 1960s which was described in *Dombrowski v. Pfister*.

By this Notice of Intervention, the undersigned Intervenor wishes to join and support Kathy Ann Garcia Lawson in challenging the legitimacy of the State of Florida's exercise of judicial jurisdiction over Domestic Relations and boundaries between State and Federal Jurisdiction to review and assess the constitutional

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                6

97 of 193

competence of state statutes, customs, practices, and policies having the force and effect of law in light of both Federal and Florida Constitutions will be reviewed. While it is true that the Florida Constitution has more express protections for religious freedom than the Federal Constitution, Intervenor submits that the proper nature degree, the proper scale by which the original intent and meaning of the term "religious freedom" should be evaluated or defined are the terms as understood by the Founders' Anglo-American Society in 1787-1794.

Intervenor submits that the Founders' frontier culture of individual reliance and self-discipline is that which is immutably fixed and Federalized by the incorporation doctrine under the Fourteenth Amendment, whereby all guarantees of the United States Bill of Rights were applied to the States. Intervenor contends that on July 9, 1868, the adoption of the 14th Amendment thereby abolished (for example) any and all residual church-state "ecclesiastical" courts such as might have exercised divorce court or custody jurisdiction as a matter of "equity" or "chancery" prior to July 9, 1868. The existence of Family Courts, of Domestic Relations Jurisdiction, and state-resolution of child custody and child-rearing disputes is simply inconsistent with true privacy and individual liberty. People cannot simultaneously be free and delegate the resolution of all conflicts regarding their intimate personal and private lives to the State. Intervenor submits and

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

7

98 of 193

demands that all ordinary civil laws concerning contracts, partnerships, personal injury, and the statute of frauds be applied as the sole bases for state court resolution of marital conflicts, and that in the absence of written contracts, no Florida state court should ever intervene in a marital dissolution or impose a "contract of adhesion" which is revealed to the parties only upon marital failure or parental discord and conflict.

## FRAMEWORK OF INTERVENTION

The undersigned INTERVENOR now respectfully comes before this Court asking that the Court justify and validate the Federal Court's confidence that Florida is more like California in the late 1960s than Louisiana in the early 1960s, which is to say Intervenor requests and demands PROOF that this Court is actually capable of and willing seriously to hear and entertain this intervenor's critical constitutional challenges to the Florida Laws relating to marriage, dissolution, and domestic relations in detail.

**The undersigned INTERVENOR in particular wishes to challenge the jurisdiction of this Court (or any special court of Domestic Relations whose primary purpose is to enforce the marital and divorce laws of Florida) to EXIST in light of the application by the Fourteenth Amendment of the First Amendment to the States.**
In essence: prior to the great War Between the States of 1861-1865, states were free to establish religion and limit free speech if they so desired because the Bill of Rights only applied to the

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*     8

99 of 193

Federal Government.   As was revealed in a series of twentieth century decisions reviewed below, the Bill of Rights (including the separation of Church and State) was INCORPORATED to the States by the operation of the Fourteenth Amendment.

The Supreme Court has clarified the extent and contours of the incorporation of the Bill of Rights to the States over the past hundred years, but has never addressed this simple question: if marriage and child rearing were primarily if not exclusively matters of private religious or philosophical choice in 1787-1792, by what interpretation of the Fourteenth Amendment could states AFTER the adoption of the 14th Amendment continue to regulate, much less to expand their regulation, of those spheres of life which in 1787-1792 were clearly the province of private religious choice only?

The undersigned intervenor now moves and request that rather than proceeding with its summary execution of yet another marriage, that this Court summarily divest itself of jurisdiction by recognizing that its very existence is offensive and repugnant to the individual liberties and religious freedom chartered in the United States Constitution, which affords less precise religious freedom than the Constitution of the State of Florida.   The long-standing nature of the constitutional error of state regulation of marriage and divorce is no excuse for its perpetuation, because

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          9

100 of 193