unconstitutional customs, practices, and policies cannot overturn or amend the constitution.

## SUBSTANTIVE DUE PROCESS "LIBERTY INTERESTS" PROTECTED BY THE FOURTEENTH AMENDMENT AGAINST STATE INFRINGEMENT

There was a time in these United States when a certain, racially defined, class of people were held as slaves by others, when human beings were legally classified chattel properties like pieces of furniture or vehicles. The reality that the fundamental guarantees of the constitution were not available to all Americans did not change quickly.  It is an ongoing process and it is not over, not even today.  The undersigned intervenor suggests that there are gaps in the evolution of substantive due process "liberty interests" which should be protected by the Fourteenth Amendment which have not yet been recognized. Intervenor asks the Court to consider that the interests of justice will be well-served by allowing this intervention to proceed, and s/he promises that s/he will not falter or fall by the procedural wayside in the prosecution of this intervention.  Intervenor also asks that s/he be considered as a candidate for class representative if this court should allow the certification of this question as a class action for the abolition of the Domestic Relations Courts in general as well as State Control over Marital, Licensing, Dissolution, and Child Custody in particular.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          10

101 of 193

Intervenor asks and moves this Court to allow this intervention subject to Intervenor's individual right to amend or supplement this Notice of Intervention by the filing of pleadings and motions as well as answers and affirmative defenses to counterclaims or cross-claims. Intervenor's preliminary statement of his or her personal history and experiences with the Florida Domestic Relations Courts is attached as a narrative statement, included here as Exhibit A.

Intervenor also requests leave of court to amend this intervention, or to supplement it with affidavits, declarations, and other evidence to show why the facts of his-or-her case (and of the system administration of domestic relations law generally in Florida) more closely resemble those of *Dombrowski v. Pfister,* 380 U.S. 479; 85 S.Ct. 1116; 14 L.Ed.2d 22 (1965) than *Younger v. Harris* (which in NO sense overruled *Dombrowski),* 401 U.S. 37; 91 S.Ct. 746; 27 L.Ed.2d 669 (1971).

In other words, Intervenor asks for leave to prove that there is no substantive or procedural due process available in the Florida Domestic Relations Courts, and that the judges, clerks, and bailiffs of these Courts have no regard for the individual life, liberty, or property of the vast majority of the people of the State of Florida who come before or under the Domestic Relations or Marital Dissolution or Child Custody jurisdiction of these courts in the State of Florida.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*        11

## INTERVENOR'S INTEREST IS TO CHALLENGE THE LAW & COURTS

As noted, Intervenor seeks an end to the State Family Law Protection Racket, but it is obvious that this Official State Protection Racket is related to another powerful state monopoly---namely that of the State Bar and the lawyers who, like the judges and social workers, warn that they can protect (us, the people) but that dire consequences will ensue if they are not paid. In a land of freedom, the people should not be caught between two cooperating bands of thugs, but between the state courts and they state bar, they are effectively trapped in precisely this way between Scylla and Charybdis. Individuals alone can make mistakes in their life of sufficiently serious consequence to punish them adequately, in the eyes of God, without the State's help, or that of its lawyers who specialize in Marital licensing, dissolution, and custody.

For purposes of this lawsuit, Intervenor's interest will be satisfied if this Florida Circuit Court for the Fifteenth Judicial Circuit will now engage in a constitutional evaluation of Intervenor's demand that this Court order its own self-dissecting abolition. If this Court refuses to hear the constitutional complaints and violation of this intervenor, then the undersigned intervenor submits that this Court is incapable of self-regulation, and that standard for Federal Court intervention in ongoing state proceedings articulated *Dombrowski* should be followed, rather than the exception to the rule set forth in *Younger v. Harris*.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*     12

103 of 193

Obviously, the difference is that the ***Dombrowski*** rule ALLOWING Federal Court intervention is imagined or hypothesized by supporters of the current system and status quo to be less commonly broken by "exceptional circumstances" as a matter of federal-state comity, so that the burden on a ***Dombrowski v. Pfister*** proponent, such as former Federal Plaintiff Kathy Ann Garcia-Lawson, is very heavy indeed.

Intevenor submits that s/he should be ALLOWED the opportunity to approach this Court in support of former Federal Plaintiff Kathy Ann Garcia-Lawson, to assist her in carrying her burdens of both production, pleading and proof in this state Court case either as a predicate to or replacement of Federal action precisely because, "Whatever the precise contours of the bad-faith exception to the ***Younger*** doctrine may be, it is assuredly narrow." ***Lawrence v. Schwiep***, 2005 U.S. Dist. LEXIS 35471 (U.S.D.C. N.D.Fla. 2005).

Within the framework of the three-part ***Younger v. Harris*** analysis, INTERVENOR even now submits that s/he can prove beyond reasonable doubt that vested financial interests in the Florida judiciary and Florida Domestic Relations Bar prevent his or her claims, even as proposed to be reframed by this intervention here or subsequent amendments and supplements, will prevent her from ever be given an adequate hearing in state court. However, this is immaterial and cannot preclude the filing and consideration of this Notice of Intervention in that the Federal Courts have ordered

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*     13

104 of 193

Kathy Ann Garcia-Lawson, and the people of the State of Florida, to ask their state courts for relief, first. Judge Kenneth A. Marra's mandate, in essence, is that the people should exhaust all potential state remedies before demanding a Federal "takeover" or abolition of these courts by judicial fiat pursuant to the Supremacy Clause:

> Under the **Younger** line of cases, whether a federal court should abstain in deference to state proceedings turns on three questions: (1) do the proceedings constitute an ongoing state judicial proceeding, (2) do the proceedings implicate important state interests, and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*31 Foster Children v. Bush,* 329 F.3d 1255, 1274-75 (11th Cir. 2003); see also *Middlesex County Ethics Comm. v. Garden State Bar Assoc.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982),

"Extraordinary [*Dombrowski v. Pfister* type] circumstances" do indeed exist in the State of Florida, but Judge Kenneth A. Marra of the United States District Court has ordered former Federal Plaintiff Kathy Ann Garcia-Lawson and the people of the State of Florida to seek relief and try reform out fully in the State Courts, in particular by filing for complete constitutional relief in Kathy Ann Garcia-Lawson's own case and court jurisdiction, first and before returning the Federal Court.

Under the hypothetical standards of *Younger v. Harris*, if a state court is capable of self-discipline by imposing such radical constitutional reform on itself than under the holdings of *Younger*

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    14

105 of 193

*v. Harris*, than it is true under *Younger v. Harris* to say that Federal intervention is neither necessary or warranted.

Intervenor does not intend by this Complaint in Intervention solely or exclusively to challenge the "irretrievably broken" rule of decision set forth in the divorce laws of the state of Florida, focusing too narrowly on one case, *Ryan v Ryan*, from 1973. What really is and ought to be at issue are the rights to contract freely and knowingly for marriage as a fundamental right, not legitimately subject to state-imposed contracts of adhesion at all.

## THE FOURTEENTH AMENDMENT RESOLVES THE CONTRADICTIONS INHERENT IN THE UNCONSTITUTIONAL ENTANGLEMENT OF CHURCH AND STATE CREATED BY THE DOMESTIC RELATIONS CODE, which is a COERSIVE TAKEOVER OF MARRIAGE AND OTHER HOLY SACRAMENTS

Even after the slaves were freed, the children, grandchildren, and great-grandchildren of slaves were lawfully sent to the back of the bus, excluded from the more pleasant and safer neighborhoods, and denied all the better paying jobs with the best chances of promotion. The courts of the United States stood firmly behind the slave-holders and white-supremacist segregationists until approximately 1954.

The Constitutionality and general legality of slavery were never seriously questioned by the Courts of the United States. The practical reasons are obvious: slavery was big business and a major source of national wealth prior to the War Between the States and preservation of white control over property and the means of

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    15

106 of 193

production were politically important (to the dominant class) AFTER the Great War Between the States of 1861-65, and right up through the Second World War (1941-45).

Likewise, the Constitutionality and Legality of State control over marriage and domestic relations generally have never before this suit been seriously attacked on constitutional grounds, but that is what Intervenor proposes to do now by his or her present Notice of Intervention.

It is time to acknowledge and confront the fact that the Family Courts of Florida in particular, but of the several states generally, and the lawyers who have made a career out of domestic relations law constitute much the same kind of controlling and institutionalized interest group as the lawyers and court-systems of the old south, who were not capable of evaluating the constitutional outrages of slavery prior to the War Between the States nor the constitutional nightmares of segregation and white supremacy which followed the war.

Intervenor submits that it is time for a new era of civil rights activism in the United States to break the state courts' and lawyer's cartel-like monopoly over the exercise of a fundamental freedom: the right to construct one's domestic relations according to private contracts and agreements in accordance with his or her conscience, without the imposition of state-mandated (and all but publically unknown and unexplained) Contracts of Adhesion.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*     16

107 of 193

Intervenor does not merely pray for and request but simply demands and will not be satisfied with anything less than a complete re-examination of the roles of the Florida Courts in the protection of Federal (as well as State) Constitutional rights. This demand is timely, is now in order, and is requested by this Intervenor in support of Respondent Wife and former Federal Plaintiff Kathy Ann Garcia-Lawson.

The State and Federal Courts of the 19th and early through mid-20th century generally took what has been called a stance of "jurisdictional helplessness" with regard to constitutional violations of even the most egregious nature when it came to civil rights. It is the resurgence of this willful inability to address critical, politically and or socio-economically sensitive issues, which seems to underlie, at least in part, the commitment to "comity" articulated as grounds for the U.S. District Court's reliance on **Younger v. Harris**.

**Younger v. Harris** is obviously not a jurisdictional doctrine, but an abstention doctrine where the exercise of power is abjured in favor of some other value, perhaps a feeling or suspicion that "state's rights" are more important than individual rights. And of course this was precisely the theory behind the "jurisdictional

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*     17

108 of 193

helplessness" of both the State and Federal courts in the long consecutive eras of chattel-slavery and Jim Crow[1].

---

[1] Compare, for example, Judge Noonan's dissent in ***Ahmed v. Washington***, 276 F.3d 464 (9th Cir. 2001), quoting Susan Bandes' article concerning the ***Rooker-Feldman*** doctrine in a Notre-Dame Law Review seminar:

> Another reason for creating a new rule might be what is loosely called "the new federalism" -- a preference for state law and state courts over federal law and federal courts. It has been speculated that the new federalism is at least in part responsible for the recent plethora of cases applying Rooker-Feldman. See Susan Bandes, "The Rooker-Feldman Doctrine: Evaluating Its Jurisdictional Status," 74 **Notre Dame L. Rev.**, 1175, 1183 (1999). Such an explanation is plausible given that there have been over 500 cases in the last eleven years invoking Rooker and Feldman. See Suzanna Sherry, "Judicial Federalism In The Trenches," 74 **Notre Dame L. Rev.**, 1085, 1088 (1999). It is observable that application of these cases to oust a federal court of jurisdiction is a harsh rule. See Bandes, 74 **Notre Dame L. Rev.** at 1177. It is a rule not favorable to plaintiffs in civil rights cases. Id at 1177, 1205-07. It is a rule whose relation to § 1343 jurisdiction has been seriously questioned. See Jack M. Beermann, "Comments on Rooker-Feldman Or Let State Law Be Our Guide," 74 **Notre Dame L. Rev.**, 1209, 1230 (1999). It is a rule that facilitates "house-cleaning" by federal district courts. Bandes at 1205-06. It is a rule that permits the invocation of "jurisdictional helplessness" -- "What Could I do? The doctrine is mandatory." See **id.** at 1207.

Essentially, at the present time and for perhaps the past 20-25 years, the United States Federal Courts tend to throw out all civil rights challenges to the abuse of constitutional rights by the state courts either under the Rooker-Feldman doctrine or on (discretionary) grounds of Younger v. Harris abstention. This seems to be an abdication of both the roles that the Federal Courts can, could, and should play in maintaining the integrity of Federalism and in the balance of powers, the system of checks and balances, with which the Founding Fathers consciously endowed the American political and legal systems.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*　　　18

109 of 193

The one instance during this time period where the United States Supreme Court acted proactively rather than passively on the "race and citizenship" questions underlying what we now think of as "civil rights", which is to say in Chief Justice Roger B. Taney's decision in **Scott v. Sandford**, 60 U.S. (19 How.) 393 (1856-57), the Supreme Court almost singlehandedly lit the fuse which exploded powder kegs first in "Bloody Kansas," then at Harper's Ferry, and finally at Fort Sumter, plunging the United States into the war of 1861-1865.   The next really significantly proactive civil rights decision came almost a hundred years later, but the post War Between the States amendments slowly took root in the intervening 90 some odd years to lay the foundation for a new synthesis.

With the adoption of the 14th Amendment, there was a very, very slow realization that the application of the United States Constitution, as a matter of due process of law, was in fact subject to review and challenge according to the standards of Federal due process of law, which as of 1868 now applied to State Court and State Judicial Process as well as Federal.   As early as 1878, the United States Supreme Court opened the door to the possibility that State Court violations of due process of law could be challenged in Federal court:

> Since the adoption of the Fourteenth Amendment to the Federal Constitution, the validity of such judgments may be directly questioned, and their enforcement in the state resisted, on the ground that proceedings in a court of justice to determine the personal rights and

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    19

110 of 193

obligations of parties over whom that court has no jurisdiction do not constitute due process of law. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They [] mean a course of legal proceedings according to those rules and principles, which have been established in our systems of jurisprudence for the protection and enforcement of private rights.

**Pennoyer v. Neff**, 95 U.S. 714 at 733; 24 L.Ed. 565, 572 (1878).

The Justices of the Supreme Court recognized the momentous step in the history of federalism which they were taking.   Justice Field, writing for the majority in **Pennoyer**, stated:

The several States of the Union are not, it is true, in every respect independent, many of the rights and powers which originally belonged to them being now vested in the government created by the Constitution. But, except as restrained and limited by that instrument, they possess and exercise the authority of independent States, and the principles of public law to which we have referred are applicable to them. One of these principles is, that every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory. **As a consequence, every State has the power to determine for itself the civil *status* and capacities of its inhabitants; to prescribe the subjects upon which they may contract, the forms and solemnities with which their contracts shall be executed, the rights and obligations arising from them, and the mode in which their validity shall be determined and their obligations enforced; and also to regulate the manner and conditions upon which property situated within such territory, both personal and real, may be acquired, enjoyed, and transferred.** The other principle of public law referred to follows from the one mentioned; that is, that no State can exercise direct jurisdiction and authority over persons or property without its territory.

95 U.S. at 722, 24 L.Ed. at 568 (emphasis added).

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*                    20

Dissenting Justice Ward Hunt expressed grave concern about the erosion of the power of the sovereign states and their power for self-governance[2].

The phrase "incorporation to the states" was unknown to American jurisprudence in 1878[3]. However, "incorporation of bill of rights by the 14th amendment to states was ultimately recognized as law in a long series of cases decided approximately 30-60 years after *Pennoyer*. In 1907, *Patterson v. Colorado* very tentatively explored the idea of Federal Constitutional collateral review of state court infringements on fundamental rights, but despite its fearful and tentative tone rejected NEITHER the concept of incorporation NOR the concept that the Federal Courts could hear and entertain collateral attacks on the constitutionality of state

---

[2] Justice Ward Hunt's most common footnote in the history books is that he was the Federal Circuit Judge who in 1872 affirmed Susan B. Anthony's New York State conviction for voting illegally, though claiming she had the right to do so as a U.S. citizen under the 14th and 15th Amendments.
It is also noteworthy, of course, that *Pennoyer v. Neff* never could have reached the United States Supreme Court had it not first been heard in the Federal Circuit Court (ancestor of the 9th Circuit) not sitting but "riding" as the Circuit Judges did in those days in California and Oregon where the case arose.
[3] The phrase "domestic relations exemption" was likewise unknown, having effectively been invented in the *Ankenbrandt v. Richards* decision of 1992 (504 U.S. 689; 112 S. Ct. 2206; 119 L. Ed. 2d 468; 1992), although Justice White wrote that the exception, as a statutory construction, originated from another decision of the Taney Court, decided exactly two years after *Scott v. Sandford*, namely, *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L. Ed. 226 (1858-9).

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    21

rulings, including orders of contempt, said to be within the "inherent power" of every court, if these orders of contempt infringe upon fundamental rights:

> If a State should see fit to provide in its constitution that conduct otherwise amounting to a contempt should be punishable as such if occurring at any time while the court affected retained authority to modify its judgment, the Fourteenth Amendment would not forbid. The only question for this court is the power of the State. *Virginia* v. *Rives*, 100 U.S. 313, 318; *Missouri* v. *Dockery*, 191 U.S. 165, 171.
>
> It is argued that the decisions criticised, and in some degree that in the present case, were contrary to well-settled previous adjudications of the same court, and this allegation is regarded as giving some sort of constitutional right to the plaintiff in error. **But while it is true that the United States courts do not always hold themselves bound by state decisions in cases arising before them, that principle has but a limited application to cases brought from the state courts here on writs of error. Except in exceptional cases, the grounds on which the Circuit Courts are held authorized to follow an earlier state decision rather than a later one, or to apply the rules of commercial law as understood by this court, rather than those laid down by the local tribunals, *are not grounds of constitutional right,* but considerations of justice or expediency. *There is no constitutional right to have all general propositions of law once adopted remain unchanged.* Even if it be true, as** the plaintiff in error says, that the Supreme Court of Colorado departed from earlier and well-established precedents to meet the exigencies of this case, whatever might be thought of the justice or wisdom of such a step, the Constitution of the United States is not infringed. ***It is unnecessary to lay down an absolute rule beyond the possibility of exception. Exceptions have been held to exist.*** But in general the decision of a court upon a question of law, however wrong and however contrary to previous decisions, is not an infraction of the Fourteenth Amendment merely because it is wrong or because earlier decisions are reversed.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*                                    22

113 of 193

205 U.S. 454 at 460-4611; 27 S. Ct. 556; 51 L. Ed. 879 (1907)(bold and italic emphasis added)

This very muddled acceptance of the idea of incorporation is also seen slightly more evolved towards Federal Constitutional supremacy in *Coppage v. Kansas,* 236 U.S. 1; 35 S. Ct. 240; 59 L. Ed. 441 (1915).  The Supreme Court in *Coppage* held that:

> the Fourteenth Amendment, in declaring that a State shall not "deprive any person of life, liberty or property without due process of law," gives to each of these an equal sanction; it recognizes "liberty" and "property" as co-existent human rights, and debars the States from any unwarranted interference with either.

although, over Justice Oliver Wendell Holmes dissent, the court concluded in effect that anti-union "closed shop" laws did not violate any provision of freedom of association or any other liberty secured by the constitution.

It was not until the 1920s, specifically *Gitlow v. New York,* that the concept of incorporation was fully accepted:

> For present purposes we may and do assume that [HN3]freedom of speech and of the press -- which are protected by the First Amendment from abridgment by Congress -- are among the fundamental personal rights and "liberties" protected by the due process clause of the Fourteenth Amendment from impairment by the States.

268 U.S. 652 at 666; 45 S. Ct. 625 at 636; 69 L. Ed. 1138 at 1146 (1925).

And more importantly for Intervenor's purposes, *Meyer v. Nebraska*:

> The problem for our determination is whether the statute as construed and applied unreasonably infringes the liberty guaranteed to the plaintiff in error by the

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          23

114 of 193

[HN1]Fourteenth Amendment. "No State shall . . . deprive any person of life, liberty, or property, without due process of law."

While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, [HN2]it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, *to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. Slaughter-House Cases*, 16 Wall. 36; *Butchers' Union Co. v. Crescent City Co.*, 111 U.S. 746; *Yick Wo v v. Hopkins*, 118 U.S. 356; *Minnesota v. Barber*, 136 U.S. 313; *Allgeyer v. Louisiana*, 165 U.S. 578; *Lochner v. New York*, 198 U.S. 45; *Twining v. New Jersey*, 211 U.S. 78; *Chicago, Burlington & Quincy R.R. Co. v. McGuire*, 219 U.S. 549; *Truax v. Raich*, 239 U.S. 33; *Adams v. Tanner*, 244 U.S. 590; *New York Life Ins. Co. v. Dodge*, 246 U.S. 357; *Truax v. Corrigan*, 257 U.S. 312; *Adkins v. Children's Hospital*, 216 U.S. 525; *Wyeth v. Cambridge Board of Health*, 200 Mass. 474.

*The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect. Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts. Lawton v. Steele,* 152 U.S. 133, 137.

*Meyer v. Nebraska*, 262 U.S. 390, 399-400, 43 S.Ct. 625, 626-627, 67 L.Ed. 1042, 1045 (1923)(bold and italic emphasis added).

It is at this stage that Intervenor hopes that the Court will perceive his or her purpose in this lengthy exegesis on the history of substantive due process and the incorporation of the bill of rights through the Fourteenth Amendment to the States: marriage is a fundamental right, and the several states have no

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          24

115 of 193

constitutionally valid purpose in exercising state police power over it, in light of the incorporation of the First Amendment to the States through the Fourteenth. Intervenor submits that for the court to decide this question will constitute an important case of first impression, especially given the nation-wide debate on the nature of marriage and of governmental interests in determining or defining the marital relationship.

## HOW CORRUPT ARE THE COURTS OF THE STATE OF FLORIDA?

The word "corruption" is essential to showing special circumstances under *Dombrowski v. Pfister* and *Younger v. Harris.* But "corruption" is not always a case of "keystone cop" antics like those of Orleans Parish District Attorney (later Louisiana Appeals Court Judge) Jim Garrison (who was subsequently romanticized as the heroic protagonist in Oliver Stone's epic conspiracy movie *JFK*) which determined the outcome in *Dombrowski v. Pfister.* Jim Garrison and the other "Old Southern Gold Old Boys" did not like the "Damn-Yankees", Jewish-surnamed attorneys, and other civil rights activists who came to New Orleans to set up the offices of the ACLU in the early 1960s, to litigate civil rights cases in Louisiana and before the United States Court of Appeals for the Fifth Circuit, which at that time included all six states of the Deep South from Florida to Texas, lacking only South Carolina to have covered the entire originally seceding Confederate States of America. Basically, in genuine "keystone cops" fashion, Garrison et

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*                    25

116 of 193

al. started persecuting and prosecuting the ACLU attorneys, accusing them all of being communists, subversives, and filing one preposterous criminal charge against them after another, especially under "criminal" statutes with titles like "Subversive Activities and Communist Control Law (Louisiana)" which created the presumption that certain organizations were communist front organizations as a matter of law.

Intervenor contends that s/he can point to activities in Florida which would exactly parallel those in the "Big Easy" during the most intoxicatingly tumultuous days of the 1960s civil rights movement in a city not well-known for its normal social sobriety in the quietest of times.

Intervenor cannot claim that LITERAL lynch mobs dominate the Courts of Florida and intimidate both lawyers and witnesses the way they apparently dominated those of West Helena, Arkansas in the years 1919-1922 which gave rise to the circumstances of "void judgment" described in *Moore v. Dempsey*, 261 U.S. 86; 43 S.Ct. 265; 67 L.Ed. 543 (1923).

However, what Intervenor can in good faith allege is **that private, ex-parte communications are commonplace and often case-dispositive** in the Domestic Relations Courts of the State of Florida, especially but not limited to those of Dade, Broward, Palm Beach County, Volusia, Polk, Lee, Hillsborough, and Pinellas Counties. (See also Intervenor's Exhibit A).

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

Intervenor can and will produce both circumstantial and direct evidence of such activities. Intervenor can, moreover, show that there is no realistic opportunity to present constitutional challenges either to the specific procedures of domestic relations courts or to the underlying statutes in the Florida State Court system. Basically, asking a system to judge itself unconstitutional is at best a risky proposition even where hundreds of millions of dollars in attorneys' fees, state and federal governmental programs and welfare assistance, and a large number of social and political pressures to intervene in and control private lives are always afoot.

Intervenor prays that s/he be allowed to plead and then to prove that the "divorce and child custody/child support industry" is so firmly in control of the Florida Domestic Relations Court as to constitute an unofficial trade cartel/monopoly. The effect of this monopoly is to suppress free and open exchange of ideas regarding such basic domestic relations concepts as, for example, child welfare and the psychological well-being of litigation swamped adults, who are assured by confident lawyers that "divorce is easy, assured, and guaranteed" and the only really open question is: "how badly do you really want to screw your ex?" (in the financial, social, and possibly criminal or quasi-criminal senses, of course, all other meanings of this word having been exhausted or lost their relevance).

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                27

118 of 193

Furthermore, ordinary notions of contractual or equitable obligations inherent in ordinary partnerships are totally lost on the domestic relations courts. Consider the definitions of due process of law in *Pennoyer v. Neff* , *Coppage v. Kansas*, and *Meyer v. Nebraska* quoted above---the importance placed on the honest and correct enforcement of private contracts. The Florida Domestic relations courts care only about reducing and redistributing the wealth of the parties to their lawyers, some of whom will be judges someday, and some of whom will be judges who go back to private practice some day. Such systems may not be "corrupt" in the almost comical sense of the Louisiana escapades described in *Dombrowski v. Pfister* or the grim, vicious, racial and class conflict tragedy described in *Moore v. Dempsey*, but the social costs and burdens on society are not unlike those in *Moore v. Dempsey.*

**THE PARAMOUNT CONSTITUTIONAL QUESTION:**

Intervenor intends by his/her filing of this case to seek a series of declaratory judgments concerning the basic constitutional questions of licensing of marriage and the separation of church and state, and the state's undisclosed imposition of contracts of adhesion, which have for the most part replaced freely negotiated marital contracts as the norm in modern America. Intervenor accepts and submits that whatever the state creates, like a marriage license for the state-regulation of marriages or a birth registration system for the tracking of children, the state can

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    28

119 of 193

manipulate or destroy on any terms that please the state (or the lawyers who form such a large part of state government).

Thus, the question goes back to the constitutional legitimacy of the basic state-run enterprise, the state action monopoly on licensing and imposing contracts of adhesion not just on marital relations but parent-child relations and even non-parent-to-child non-parent-to-parent relationships. The licensing of marriage and the imposition of contracts of adhesion on all persons who want a domestic life of any sort is the antithesis of freedom and the (perhaps we should call it the 9th Amendment) right to individual autonomy, privacy, and self-determination for which the American Constitutional system of government was created, but it is the biggest business in State Government today, larger than road-building or environmental regulation or anything else.

The Domestic Relations Courts and Marital Licensing and Dissolution administrative apparatus of the State of Florida basically exist to "serve" people by (at the very least) meddling (very destructively) in their private lives through the avenues of the domestic relations laws. The keystone of the unconstitutional license given to the Domestic Relations Courts and Marital Licensing and Dissolution agencies of Florida is the authority do so in the name of either of "public welfare" or "the best interests of the child" which are among the broadest and most limitless

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

29

120 of 193

licenses ever assigned to destroy the rights of any democratic people and undermine the Republican form of government.

So, if the Supreme Court was correct in **Meyer v. Nebraska**, and many subsequent cases, about the centrality of family, domestic, and marital relations in the due process protections afforded by the Fourteenth Amendment, then by what right or power, "**Quo Warranto**?" does the state now interject itself into all aspects of individual, domestic, and private family life?  The primary keys appear to be the marriage license and birth certificate, which have utterly replaced two of the seven sacraments of the traditional Christian faith in the practical, social, political, and economic lives of most people in America today.

Insofar as Intervenor has determined by his/her diligent research, prior to filing this case, the constitutionality of the state issued/mandated marriage license has never been seriously tested in the State of Florida or elsewhere. In light of U.S. District Judge Kenneth A. Marra's mandate, Intervenor, side-by-side with former Federal Plaintiff and Respondent Kathy Ann Garcia-Lawson, simply asks why not here? And if not here then where?  Why not now?  And if not now then when?

The constitutional basis of to be found in the fundamental first amendment nature of marriage.  Marriage in 1787 was fundamentally a sacrament administered by the Church without state licensing.  Marriage is thus a subject of free exercise of

*Notice of Intervention in Support of Constitutional Questions after*          30
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

religion, of freedom from the establishment of any church or the selection or preferential treatment given to any one set of morals, dogmas, rites, and ceremonies by the state.   Marriage may also be the subject of the right of freedom of speech (to articulate feelings to whomever one pleases?), and the freedom of peaceful assembly---for socially supported mate-finding, or relationship-maintaining relationships.

Yet State Licensed marriage treats the marital couple almost as suspects (even the standard of proof in domestic relations court, "clear and convincing evidence" is sometimes called "quasi-criminal" in nature), and the resulting state mandated divorce procedure is in essence the imposition of a cruel and unusual punishment without due process of law in any sense of the phrase. So again, Intervenor asks, what is the basis for the state licensing of marriage?

## NO TAX OR LICENSE MAY BE IMPOSED
## ON THE EXERCISE OF ANY FIRST AMENDMENT RIGHT

The answer is that there is no such basis.  A line of cases from the 1930s and 1940s establishes firmly that there can be NO tax or license imposed on the exercise of any first amendment right.  One case, on which all subsequent decisions rely, *Grosjean v. American Press Company*, established in 1936 that a state could not impose or enforce a tax on advertisements in a newspaper where the tax operated to limit the circulation of information. 297 U.S.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    31

122 of 193

233; 56 S.Ct. 444; 80 L.Ed. 660 (1936).

Seven years later, however, in **Murdock v. Pennsylvania**, the Supreme Court clearly held (1) that the power to tax the exercise of a privilege is the power to control or suppress its enjoyment, (2) a **state** may not impose a charge for the enjoyment of a right granted by the federal constitution (3) a person cannot be compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution, and (4) the fact that a licensing ordinance is non-discriminatory does not relieve it from attack upon the ground that it violates the constitutional guaranties of freedom of religion and of speech and press. 319 U.S. 105, 111-115; 63 S.Ct. 870, 874-876; 87 L.Ed. 1292, 1298-1300 (1943):

> The fact that the ordinance is "nondiscriminatory" is immaterial. The protection afforded by the First **Amendment** is not so restricted. A license tax certainly does not acquire constitutional validity because it classifies the privileges protected by the First **Amendment** along with the wares and merchandise of hucksters and peddlers and treats them all alike. Such equality in treatment does not save the ordinance. Freedom of press, freedom of speech, freedom of religion are in a preferred position.

319 U.S. at 115, 63 S.Ct. at 876, 87 L.Ed. at 1299-1300.

If marriage is to be a matter of First Amendment concern at all, it is at least as immune from licensing and taxation as preaching the Gospel. Intervenor submits that it is nothing short of incredible that this contradiction has not previously been noted

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*                    32

123 of 193

or litigated, but there is an obvious and causal connection: marriage was a primarily a religious and expressive matter in 1787. Marriage is now treated by the Florida Domestic Relations Courts as primarily a commercial matter, while limiting the ability or motivation of parties freely to contract about it, but that fact that marriage has both a sacramental and a commercial aspect to it does not lessen its entitlement to full exemption, under the First and Fourteenth Amendments, from any licensing procedures:

> Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their own way. As we have said, the problem of drawing the line between a purely commercial activity and a religious one will at times be difficult.
> \* \* \* \* \* \* \* \* \*
> We have here something quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities. It is one thing to impose a tax on the income or property of a preacher. It is quite another thing to exact a tax from him for the privilege of delivering a sermon. The tax imposed by the City of Jeannette is a flat license tax, the payment of which is a condition of the exercise of these constitutional privileges.

319 U.S. at 111-112, 63 S.Ct. at 874, 87 L.Ed. 1297-98.

A case which closely followed *Murdock* during this amazing decade of "pro freedom" decisions coming down from the Supreme Court, reprimanding state after state for unconstitutional burdens on the exercise of First Amendment rights on account of Fourteenth Amendment incorporation was *Follet v. McCormick,* which reaffirmed that (even where a person's entire living came from his First

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*   33

124 of 193

Amendment activities, so that there was no doubt about their commercial importance to this particular individual):

> Freedom of press, freedom of speech, freedom of religion are in a preferred position. The "inherent vice and evil" of the flat license tax is that it restrains in advance those constitutional liberties and inevitably tends to suppress their exercise.
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> The exemption from a license tax of a preacher who preaches or a parishioner who listens does not mean that either is free from all financial burdens of government, including taxes on income or property. But to say that they, like other citizens, may be subject to general taxation does not mean that they can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege.

321 U.S. 573, 575-76; 64 S.Ct. 717, 718-19; 88 L.Ed. 938, 940 (1944)

Even statutes with such commendable public health and general welfare purposes as preventing littering on the streets may not be imposed or enforced where they restrict freedom of speech or expression. "To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees." *Schneider v. State*, 308 U.S. 147, 164; 60 S.Ct. 146, 152; 84 L.Ed. 155, 166 (1939). A parallel case in this line *Cantwell v. Connecticut*, 310 U.S. 296; 60 S.Ct. 900; 84 L.Ed. 1213 (1940) made the interesting point that the state had no right to determine either by administrative or judicial means what was "religious" or not:

To condition the solicitation of aid for the perpetuation

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    34

of religious views or systems upon a license, the grant of which rests in the exercise of a determination by **state** authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution.

310 U.S. at 307, 60 S.Ct. at 904-905, 84 L.Ed. at 1219, citing **Near v. Minnesota,**

A statute authorizing previous restraint upon the exercise of the guaranteed freedom by judicial decision after trial is as obnoxious to the Constitution as one providing for like restraint by administrative action.

It is interesting to note that several Florida statutes show the excessive entanglement (coming very close to establishment) which the licensing of marriage creates between state and church officials:

§ 741.07.  Persons authorized to solemnize matrimony
All regularly ordained ministers of the gospel or elders in communion with some church, or other ordained clergy, and all judicial officers, including retired judicial officers, clerks of the circuit courts, and notaries public of this state may solemnize the rights of matrimonial contract, under the regulations prescribed by law.
§ 741.041.  **Marriage license** application valid for 60 days
**Marriage licenses** shall be valid only for a period of 60 days after issuance, and **no person** shall perform any **ceremony of marriage** after the expiration date of such **license**. The county court judge or clerk of the circuit court shall recite on each **marriage license** the final date that the **license** is valid.

**And of course,** just like the disputed licensing fees in **Murdock v. Pennsylvania** and **Schneider v. State** the Florida marriage licenses are flat and non-discriminatory EXCEPT for the recent provisions for a fee reduction if one takes a state approved pre-marital

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*     35

126 of 193

instructional course [§741.0305(5)] analogous to the pre-marital

instruction and preparation courses provided by many churches:

> § 741.01. County court judge or clerk of the circuit
> court to issue **marriage license**; fee
> (1) Every **marriage license** shall be issued by a county
> court judge or clerk of the circuit court under his or
> her hand and seal. The county court judge or clerk of the
> circuit court shall issue such **license**, upon application
> for the **license**, if there appears to be no impediment to
> the **marriage**. The county court judge or clerk of the
> circuit court shall collect and receive a fee of $2 for
> receiving the application for the issuance of a **marriage
> license**.
> (2) The fee charged for each **marriage license** issued in
> the state shall be increased by the sum of $25. This fee
> shall be collected upon receipt of the application for
> the issuance of a **marriage license** and remitted by the
> clerk to the Department of Revenue for deposit in the
> Domestic Violence Trust Fund. The Executive Office of the
> Governor shall establish a Domestic Violence Trust Fund
> for the purpose of collecting and disbursing funds
> generated from the increase in the **marriage license** fee.
> Such funds which are generated shall be directed to the
> Department of Children and Family Services for the
> specific purpose of funding domestic violence centers,
> and the funds shall be appropriated in a "grants-in-aid"
> category to the Department of Children and Family
> Services for the purpose of funding domestic violence
> centers. From the proceeds of the surcharge deposited
> into the Domestic Violence Trust Fund as required under
> §938.08, the Executive Office of the Governor may spend
> up to $500,000 each year for the purpose of administering
> a statewide public-awareness campaign regarding domestic
> violence.
> (3) Further, the fee charged for each **marriage license**
> issued in the state shall be increased by an additional
> sum of $7.50 to be collected upon receipt of the
> application for the issuance of a **marriage license**. The
> clerk shall transfer such funds monthly to the Department
> of Revenue for deposit in the Displaced Homemaker Trust
> Fund created in §446.50.
> (4) An additional fee of $25 shall be paid to the clerk
> upon receipt of the application for issuance of a
> **marriage license**. The moneys collected shall be remitted
> by the clerk to the Department of Revenue, monthly, for

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*   36

127 of 193

deposit in the General Revenue Fund.
(5) The fee charged for each **marriage license** issued in
the state shall be reduced by a sum of $32.50 for all
couples who present valid certificates of completion of a
premarital preparation course from a qualified course
provider registered under §741.0305(5) for a course taken
no more than 1 year prior to the date of application for
a **marriage license**. For each **license** issued that is
subject to the fee reduction of this subsection, the
clerk is not required to transfer the sum of $7.50 to the
Department of Revenue for deposit in the Displaced
Homemaker Trust Fund pursuant to subsection (3) or to
transfer the sum of $25 to the Department of Revenue for
deposit in the General Revenue Fund.

The Florida Statutes thus mandate a constant stream of interaction
between state and religious authorities relating to marriage and in
effect make religious officers optional "state agents" for the
performance ONLY of state-licensed marriages.  State officials are
obviously, like those in *Cantwell v. Connecticut* constantly placed
in the position of deciding who or what is religious or not.

The Florida scheme may or may not be worse in this regard than
other states. But, applying the famous *Lemon v. Kurtzman*, 3 part-
test for religious establishment impact of state actions, 403 U.S.
602; 91 S. Ct. 2105; 29 L. Ed. 2d 745 (1971), there is no doubt
that the Florida marriage licensing scheme creates "excessive
entanglement" of state and religious activities, and so far blurs
the boundaries that the whole notion of a "wall of separation
between church and state" has indeed come tumbling down. According
to Chief Justice Warren Burger's opinion in *Lemon* (sometimes called
"*Lemon I*" although the second Supreme Court opinion dealt only with

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          37

128 of 193

remedies rather than tests), the three main evils against which the Establishment Clause was intended to afford protection were sponsorship, financial support, and active involvement of the sovereign in religious activity, and from these three evils, the Court gleaned three tests from the Supreme Court history of Establishment Clause cases.

The three parts of the **Lemon** test are: first, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion.

Intervenor submits that the Florida Statutes establishing the marriage license requirements in the State of Florida flunk all three prongs of the **Lemon** test as well as facially violating the **Murdock v. Pennsylvania** and **Follet v. McCormick** prohibitions on the licensing or taxing of fundamental rights. It is inconceivable what the Supreme Court would have said at that time about licensing schemes which were linked to unstated but unescapable contracts of adhesion which would regulate the individual's life forever after unwittingly "signing on" to the state-licensed and taxed exercise of a fundamental right, connected by the express terms of the Florida Statute to a PRESUMPTION that there will be both domestic violence and "displaced homemakers" who require special governmental protection and welfare provisions. (The governmental

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                38

129 of 193

services involved in these matters are each awarded a slice of the marital license fee/tax.)

In other words, **by marrying in the state of Florida spouses become automatic, presumptive candidates for a wide array of state "services" amounting to a presumptive protection racket with extortion by both lawyers and state officials all but guaranteed along the way if the marriage should ever fall on hard times.**

The undersigned Intervenor now proposes to step back and attack a much larger statutory framework. If the Court should invalidate the Florida marriage scheme, as herein requested, either as a matter of Federal Constitutional law under the First, Fifth, Ninth, and Fourteenth Amendments, or for excessive entanglement of state and religious functions under *Lemon v. Kurtzman*, it would have an invigorating effect on personal responsibility and individual independence.

Repeal of the state marital licensing and dissolution/custody regime currently considered "normal" (or at least an essential part of the status quo) might result in or in fact dictate a new socially normative situation in which people would neither "marry at haste" nor repent at leisure.  Once the state sponsored contract of adhesion implicit in statutorily-mandated marital licensing and dissolution are abolished, people will marry ONLY according to well-planned practical contracts based on shared values, or they will not marry at all.  Furthermore, there will be no authoritarian

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          39

130 of 193

"nanny state" welfare net designed to protect the truly incompetent or immoral, or (in other words) to pick up the pieces for those too casual to make their plans in advance.

Accordingly, individual failure to plan in advance will be socially and economically stigmatized in the future, as it always was in the past.  Thus, the second possible derivative result would be the non-existence of any valid Florida marriage licensing and dissolution scheme would, to put it mildly, undercut the legitimacy of the Florida divorce scheme, and put thousands of marital lawyers utterly and completely out of business.  Such a transformation of the normative legal landscape in the United States could only result in a more self-reliant, more cautious, less reckless society in which individual freedom and integrity are restored at the expense ONLY of governmental power and those who enjoy or profit from the authoritarian social-welfare dictatorship which the Florida Family Courts/Marital Licensing and Dissolution & Custody regimes have come to epitomize.

## CONCLUSION

The two decades which preceded the ***Brown v. Board*** revolution of the Warren Court were, were themselves surprisingly "revolutionary" in their own right, at least with regard to strong pronouncements of the absolute nature of First Amendment religious freedom and freedom of expression generally.   The ***Grosjean, Cantwell, Schneider, Murdock, Follet*** line of cases on First

*Notice of Intervention in Support of Constitutional Questions after*          40
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

131 of 193

Amendment generally and religious free exercise and expression was overshadowed during the Warren and Burger Courts by an emphasis on establishment clauses cases. Intervenor submits and asks this Court seriously to consider allowing her to prove that reconciling the holdings and effecting the merger of the 1930s-40s cases on religious freedom with the 1960s-70s cases on the establishment clause (e.g. **Lemon v. Kurtzman**), coupled with the much scarcer collection of cases on the family and domestic dimensions of First Amendment rights such as **Meyer v. Nebraska, Yoder v. Wisconsin,** and Sandra Day O'Connor's 2000 opinion in **Troxel v. Granville,** requires nothing less than the constitutional invalidation of state licensed marriages and all the undisclosed contracts, or regulations, of adhesion and submission to state authority and intrusion into private life which licensed marriage provides.    The domestic relations litigation that has exploded over the past 30 years has made many lawyers wealthy, and many non-lawyer litigants very poor. It is time to recognize that a new era of judicial activism, closely analogous to the **Brown v. Board** revolution of the Warren Court years, may be necessary to remove the "badges and incidents" of oppressive and intrusive state-planning and engineering of domestic relations.

### <u>PRAYER FOR RELIEF</u>

Wherefore, Intervenor joins Respondent Wife and former Federal Plaintiff Kathy Ann Garcia-Lawson to move, request, and pray that

*Notice of Intervention in Support of Constitutional Questions after*          41
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

this Court will allow these pleadings in intervention to allege and frame and then to present evidence and proof regarding the unconstitutionality of the State Domestic Relations Court's politically and economically motivated collusion to "fix" all domestic relations cases.

Intervenor further asks this Court to enter a declaratory judgment, and therein to declare and adjudge this Court's very existence to be unconstitutional as a violation of the freedom of expression, association, and religion enshrined by the First Amendment, the protection for substantive and procedural due process guaranteed by the Fifth Amendment, and the reservation of all rights to the people under the Ninth Amendment. Intervenor asks this 15th Judicial Circuit Court to apply all these Constitutional Rights in the Federal Bill of Rights to the States by operation of the Fourteenth Amendment, as construed by the United States Supreme Court in *Grosejean* and all related cases.

Intervenor further and finally moves and requests that this Court to Dismiss all cases now pending before it for Want of Constitutionally Valid Jurisdiction and that the Court admit that the imposition of the State Marital Licensing and Dissolution regime was a result of political and Public Fraud, resulting from a conspiracy to impose unconstitutional communistic values and an authoritarian regime on the American public.

In effect, Intervenor wishes hereby to obtain a final

*Notice of Intervention in Support of Constitutional Questions after*      42
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

September 3̲0̲, 2009

Intervenor's Name: Rebecca Potter

Address: 1417 Michigan Drive

City, County, State, Zip: Lake Worth, FL 3346

Telephone: 561-876-7148

E-mail: tlc211 @ gmail.com

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

43

134 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judical Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted,

September 3d , 2009        _Rebecca Potter_

Intervenor's Name: _Rebecca Potter_

Address: _1417 Michigan Drive_

City, County, State Zip: _Lake Worth, FL 33461_

Telephone: _561-876-7148_

E-mail: _flc211@gmail.com_

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*        44

# Exhibit A:
# Intervenor's Personal Statement of Abuse and/or Dissatisfaction with the Florida Marital Licensing & Dissolution & Child Custody Regimes (including but not limited to any particularly outrageous Court Orders or other evidence)

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*          45

136 of 193

Rebecca Potter
CASE NO:  50 2007 DR 000055MB FC

**NOTICE OF INTERVENTION IN SUPPORT OF KATHY ANN GARCIA-
LAWSON COURT LICENSED COMPLAINT TO TERMIN ATE AND
OTHERWISE TO CHALLENGE THE CONSTITUTIONALALITY OF
FLORIDA DOMESTIC REELATIONS COURTS, PROCEDURE AND
JURISDICTION AFTER JUDGE KENNETH MARRA'S DISMISSAL.**

Loss of Faith in Justice and the Pursuit of Happiness in America.  A testimony of abuse
by Florida Family Courts.

It is painful for me to even recount the domestic legal abuse that I had to endure by the 15
TH Judicial Family Court of Palm Beach County Florida to divorce my husband of six
years.  People will look at me and ask, "Did you have an attorney?"  I responded, "Yes,
two of them."

My former husband was a controlling man and the mental and verbal abuse continued on
a daily basis.  I could do nothing right.  I am an intelligent woman with a master's degree.
My former husband became more intense after I challenged him and without my
knowledge, he went to consult with John Christiansen's firm. After this consultation, my
ex began to set me up and the physical abuse began.  This consultation was hidden from
me and I had to vacate my home because I was in fear for my life after this consultation.
He became arrogant and entitled and tried to drive me into doing things that would
jeopardize me financially.  For instance, he claimed that I needed to sign a post nuptial
agreement.  I refused and then he began to physically assault me.  This consultation gave
him a sense of superiority and he became an out of control violent fearful man.  How
could a professional be allowed to support and encourage this type of abuse?  Only for
profit and only in the Family Court System of America.

I consulted with Troy Klein and he told me my only option was to file for divorce.  He
was, " the expert" and I did as he recommended.  My former husband would not allow
me access to my personal belongings or into my home and I had to live in my office and
with friends until Mr. Klein was able to secure temporary alimony for me, five months
after he insisted that I needed to file for divorce .  I slept on friend's couches until I
became so ill I was not able to travel.  I later discovered that my former husband, a
commercial airline pilot,  was sleeping with countless women and had infected me with
Hepatitis B.  I was so sick I could not work more than two hours at a time.

I repeatedly asked Mr. Klein to have my ex tested for Hepatitis B.  He told me he was"
the expert" and would make the determination.  At the first hearing, Mr. Klein did not
submit the motion for attorney fees and I was left without funds for an attorney.  Mr
Klein had begun to threaten me to withdraw from the case if I did not listen to what he

recommended. I began to feel as if I was again with a pathological controlling man. I began to suspect his professionalism.

I then secured another recommended attorney who told me he would diligently fight for me. He told me that I had a civil lawsuit against my former husband for the Hepatitis B. This lawsuit was began and then after the settlement agreement, dropped. I believe this was just a ploy to get me to sign the settlement agreement. He referred me to an accountant. I went to the accountant who told me he would secure $250,000.00 for me. I paid both of these men. I was told that I must attend a meeting with the accountant and attorney (Mark Maynor). I went to Mr. Maynor's office and was told they were not available. I had to speak with an assistant and a paralegal. When I left, I saw Mr. Maynor.

Mr. Maynor then told me he was going to withdraw from my case. I was sick and did not have funds for another attorney.

I went on a vacation with my family and was told that I had to attend a mediation when I returned. I had already attended two mediations with my ex, which resulted in no agreements and further financial cost to an already disabled woman. I told the paralegal that I had to move out of a temporary housing and she said that I had to mediate.

I was suffering Post Traumatic Stress Disorder and Hepatitis B and I could not be in the same room as my ex or near him. I was suffering intense flashbacks of being beaten and in fear of my life. I was shocked, frightened and could not focus or concentrate on any details. This was used against me and I was forced to sign a settlement agreement. I was bullied by my attorney and the accountant. I was told the attorney did not have time to prepare for trial and the accountant told me he was costing me a lot of money so I had better sign. I was sick and I could not think.

I signed, and my attorney dropped me. He put a lien on my home and did not put a clause in the agreement for attorney fees if my former husband did not abide by the agreement. I was forced to get real estate assessments and the property was not even considered in the settlement agreement. My former husband would not honor the agreement. I had to go to court to enforce each part of the agreement. All of this affected my PTSD. I had to seek psychological and biological treatment for the PTSD. I am still affected by this today and I have had to reduce my work load due to the now physical effects due to the PTSD.

I was awarded the marital home if I could obtain a mortgage. I did obtain a mortgage. The home was torn apart with no roof due to hurricane damage. My former husband would not comply with the agreement and did not clear construction liens. I was forced to wait one year until the liens dropped. Meanwhile storms would cause water to enter into the home. I had to spend even more money to fix this damage.

My personal belongings were kept by my ex and the court would not compel him to return these belongings as per the settlement agreement. This was specifically stipulated

in the settlement agreement. He did not follow the agreement and the court would not compel him to follow this agreement.

In a session with the Magistrate, my rights were taken away from me in a lawsuit that was filed in my name. In an ex-parte hearing, the Magistrate removed my rights to be involved in the lawsuit, but I had to split the attorney fees. My ex, who did not even have the home was allowed to settle the case. He waited to get an attorney. The contractor then threatened bankruptcy and the case was settled for nothing. I was supposed to receive supplies and these were not returned. Again costing me more money.

The court allowed this man to further abuse me and attorneys and accountants to abuse me mentally and financially.

The lawyers are afraid to sue due to repercussions from these pathological attorneys. I have permanent physical damage due to the PTSD. I have lost hope and fear to be a female citizen of this country after this domestic legal abuse.

So there is no justice in family court. Family Court is a **Fruad!** It is only an organization to assist pathological individuals to abuse the innocent. If you have the money, you can be assisted to commit domestic legal abuse. If you do not have funds, you must swim among the sharks who take everything from you and are not required to live up to any type of professional standards. On paper it appears they are, but there are no brave individuals who govern this type of abuse and set consequences for these actions. So there is no justice in America.

Rebecca Potter

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
        HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
        WIFE.

**ORIGINAL RECEIVED FOR FILING**

**SEP 3 0 2009**

**CLERK CIRCUIT CIVIL DIVISION**

2005DR001269XXXXNB
FAMILY DIVISION "FH"

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

<u>**NOTICE OF INTERVENTION IN SUPPORT OF**</u>
<u>**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND**</u>
<u>**OTHERWISE TO CHALLENGE**</u>
<u>**THE CONSTITUTIONALITY OF**</u>
<u>**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,**</u>
<u>**AND JURISDICTION AFTER JUDGE KENNETH MARRA'S**</u>
<u>**DISMISSAL pursant to *YOUNGER v. HARRIS*, 401 U.S. 37 (1971)**</u>

The undersigned Intervenor asserts his or her right in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*        1
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September 30, 2009, by: _____

Intervenor's Name: _ELADIO ARMESTO_

Address: _POB 350002, M_

City, County, State, Zip: _MIAMI, FL 33135-0002_

Telephone: _305-530-8787_

E-mail: _PATRIANEWS@aol.com_

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

43

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Attorney General Bill McCollum
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Tel: 850414-3662 Fax:488-4872

Tel: 850-414-3662; Fax: 488-4872

Respectfully Submitted, and

Signed on September 3ᵈ, 2009 by: _____

Intervenor's Name: _ELADIO   ARMESTO_

Address: _POB 350002_

City, County, State Zip: _MIAMI, FL 33135-0002_

Telephone: _305-530-8787_

E-mail: _PATRIANEWS@aol.com_

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*    44

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

COPY
ORIGINAL RECEIVED FOR FILING

OCT 14 2009

CLERK ... MILLER

2005DR001269XXXXNB
FAMILY DIVISION "FH"

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

### NOTICE OF INTERVENTION IN SUPPORT OF
**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND OTHERWISE TO CHALLENGE**
**THE CONSTITUTIONALITY OF**
**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE, AND JURISDICTION AFTER JUDGE KENNETH MARRA'S DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her in this case to demand an answer to one core question: are the Domestic Relations Courts of the State of Florida really capable of evaluating the constitutional violations of fundamental rights to life, liberty and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought for several years now (at least) to obtain answers to her questions concerning the constitutionality of various provisions of the Florida Dissolution and Domestic Relations Codes (especially but not limited to Chapters 61 and 741 of the Florida Statutes). KATHY ANN GARCIA-LAWSON has also challenged the qualities of substantive and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*    1

143 of 193

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,


And Signed on ~~September~~ October /4 , 2009, by: _fl Cude Drelha l_____

Intervenor's Name: ROBERTA BERTRAND_____

Address: 465 Paradise Isle Blvd #309_____

City, County, State, Zip: Hallandale, FL. 33009_____

Telephone: 954-456-2386_____

E-mail:_____

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.          Attorney General Bill McCollum
Attorney of Record for and c/o            Office of the Attorney General
Dr. Kathy Ann Garcia-Lawson              The Capitol PL-01
2620 Nature's Way                         Tallahassee, Florida 32399-1050
Palm Beach Gardens, Florida 33410        Tel: 850-414-3662 Fax: 488-4872

Tel: 850-414-3662; Fax: 488-4872
Respectfully Submitted, and

Signed on ~~September~~ *October* 14, 2009 by: _____

Intervenor's Name: _____

Address: _____

City, County, State Zip: _____

Telephone: _____

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

44

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
       HUSBAND,

                                    2005DR001269XXXXNB
AND                                 FAMILY DIVISION "FH"

KATHY ANN GARCIA-LAWSON
       WIFE.                                   COPY
                                  ORIGINAL RECEIVED FOR FILING

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:        OCT 14 2009

                                   CLERK & COMPTROLLER
          NOTICE OF INTERVENTION IN SUPPORT OF   NORTH COUNTY
KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND
                   OTHERWISE TO CHALLENGE
                 THE CONSTITUTIONALITY OF
     FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,
       AND JURISDICTION AFTER JUDGE KENNETH MARRA'S
    DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)

     The undersigned Intervenor asserts his or her right in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

     As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes).  KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*        1
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on ~~September~~ October 14, 2009, by: _Gustavo L. Marklo_

Intervenor's Name: _____

Address: _8230 SW 117 Terrace_

City, County, State, Zip: _Miami, Miami-Dade, Fla   33156_

Telephone: _305-238-5428_

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*          43

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judical Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judical Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted, and

Signed on ~~September~~ October 14, 2009 by: _____ Gustavo L. Marhelo

Intervenor's Name: _____

Address: 8230 SW 117 Terrace

City, County, State Zip: Miami, Miami-Dade, Fla. 33156

Telephone: 305-238-5428

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after*      44
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
WIFE.

2005DR001269XXXXNB
FAMILY DIVISION "FH"

ORIGINAL RECEIVED FOR FILING

OCT 14 2009

CLERK & COMPTROLLER
NORTH COUNTY
CIVIL DIVISION

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

**NOTICE OF INTERVENTION IN SUPPORT OF**
**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND**
**OTHERWISE TO CHALLENGE**
**THE CONSTITUTIONALITY OF**
**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,**
**AND JURISDICTION AFTER JUDGE KENNETH MARRA'S**
**DISMISSAL pursant to _YOUNGER v. HARRIS,_ 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*                    1
*Federal Court Dismissal under _Younger v. Harris,_ 401 U.S. 37 (1971)*

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September /4, 2009, by: _____

Intervenor's Name: _ATEEK REHMAN_

Address: _4SE MTST #11_

City, County, State, Zip _GALTHA, FL - 3BNC_

Telephone: _(305) 308-7606_

E-mail: _____

Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under *Younger v. Harris*, 401 U.S. 37 (1971)                43

150 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Attorney General Bill McCollum
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Tel: 850414-3662 Fax:488-4872

Tel: 850-414-3662; Fax: 488-4872

Respectfully Submitted, and

Signed on September 11, 2009 by: _____

Intervenor's Name: ATEEN REHMAN

Address: _____

City, County, State Zip: _____

Telephone: _____

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

44

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

2005DR001269XXXXNB
FAMILY DIVISION "FH"

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

### NOTICE OF INTERVENTION IN SUPPORT OF
### KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND OTHERWISE TO CHALLENGE
### THE CONSTITUTIONALITY OF
### FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE, AND JURISDICTION AFTER JUDGE KENNETH MARRA'S
### DISMISSAL pursant to *YOUNGER v. HARRIS*, 401 U.S. 37 (1971)

The undersigned Intervenor asserts his or her in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

1

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September ~~OCTOBER~~ _14_, 2009, by: _Michael B_____

Intervenor's Name: _MICHAEL BENJAMI___

Address: _101 E. OKEECHOBEE Rd_____

City, County, State, Zip: _HIALEAH FL 33010_

Telephone: _305 883 9004_____

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*     43

153 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judical Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted, and

Signed on September *14*, 2009 by: _____

Intervenor's Name: *MICHAEL BENJAMIN*

Address: *101 E. OKEECHOBEE Rd*

City, County, State Zip: *HIALEAH FL 33010*

Telephone: *305 883 9004*

E-mail: _____

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

2005DR001269XXXXNB
FAMILY DIVISION "FH"

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

**NOTICE OF INTERVENTION IN SUPPORT OF**
**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND**
**OTHERWISE TO CHALLENGE**
**THE CONSTITUTIONALITY OF**
**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,**
**AND JURISDICTION AFTER JUDGE KENNETH MARRA'S**
**DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

1

155 of 193

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September ~~September~~ _OCT._ _14_, 2009, by: _Jorge Norona_

Intervenor's Name: _Jorge Norona_

Address: _4113 Sw 31 St._

City, County, State, Zip: _Miramar, Fl. 33027_

Telephone: _954-913-6970_

E-mail: _Zion56@Comcast.net_

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                43

156 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15ᵗʰ Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted, and

Signed on September Oct. 14 2009 by: _Jorge Norona_

Intervenor's Name: Jorge Norona

Address: 14113 SW 31 St.

City, County, State Zip: Miramar, Fl. 33027

Telephone: 954-913-6970

E-mail: Ziso 56 @ Comcast.net.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

44

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

2005DR001269XXXXNB
FAMILY DIVISION "FH"

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

### NOTICE OF INTERVENTION IN SUPPORT OF
### KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND OTHERWISE TO CHALLENGE
### THE CONSTITUTIONALITY OF
### FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE, AND JURISDICTION AFTER JUDGE KENNETH MARRA'S
### DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)

The undersigned Intervenor asserts his or her in this case to demand an answer to one core question: are the Domestic Relations Courts of the State of Florida really capable of evaluating the constitutional violations of fundamental rights to life, liberty and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought for several years now (at least) to obtain answers to her questions concerning the constitutionality of various provisions of the Florida Dissolution and Domestic Relations Codes (especially but not limited to Chapters 61 and 741 of the Florida Statutes). KATHY ANN GARCIA-LAWSON has also challenged the qualities of substantive and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*   1

158 of 193

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September ~~October~~ 14, 2009, by: _Nelly Benjamin_

Intervenor's Name: _Nelly Benjamin_

Address: _2168 NW 80 8th Way_

City, County, State, Zip: _Pembroke Pines, Fl 33009_

Telephone: _305 200-6049_

E-mail: _Nelly063@yahoo.com_

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

43

159 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judical Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15ᵗʰ Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted, and

Signed on September *14*, 2009 by: _Nelly Benjamin_

Intervenor's Name: _Nelly Benjamin_

Address: _2168 Nw 205Th Way_

City, County, State Zip: _Pembroke pines, Fl 33029_

Telephone: _305-200-6079_

E-mail: _Nelly063@yahoo.com_

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

44

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

2005DR001269XXXXNB
FAMILY DIVISION "FH"

ORIGINAL RECEIVED
FOR FILING

SEP 3 0 2009

CLERK
CIRCUIT CIVIL DIVISION

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

**NOTICE OF INTERVENTION IN SUPPORT OF**
**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND**
**OTHERWISE TO CHALLENGE**
**THE CONSTITUTIONALITY OF**
**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,**
**AND JURISDICTION AFTER JUDGE KENNETH MARRA'S**
**DISMISSAL pursant to *YOUNGER v. HARRIS*, 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her right in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

1

161 of 193

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September ___, 2009, by: ___Robert J Bertrand___

Intervenor's Name: ___Robert J Bertrand___

Address: ___6951 Miami Lakeway S___

City, County, State, Zip: ___Miami Lakeway     South___

Telephone: ___786 335-0720___

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

43

162 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.          Attorney General Bill McCollum
Attorney of Record for and c/o            Office of the Attorney General
Dr. Kathy Ann Garcia-Lawson              The Capitol PL-01
2620 Nature's Way                         Tallahassee, Florida 32399-1050
Palm Beach Gardens, Florida 33410         Tel: 850414-3662 Fax:488-4872

Tel: 850-414-3662; Fax: 488-4872
Respectfully Submitted, and

Signed on September ___, 2009 by: _____

Intervenor's Name: _____

Address: _____

City, County, State Zip: _____

Telephone: _____

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

44

# Exhibit A:
# Intervenor's Personal Statement of Abuse and/or Dissatisfaction with the Florida Marital Licensing & Dissolution & Child Custody Regimes (including but not limited to any particularly outrageous Court Orders or other evidence)

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

45

164 of 193

Case 9:09-cv-81615-KAM  Document 1-2  Entered on FLSD Docket 10/30/2009  Page 65 of 93

Report from the:



# White House
# Conference on FAMILIES

# THE FAMILY
# STILL IN GREAT PERIL

Probably, the worst thing happening to the American family is the destructive attack upon it by no-fault divorce, as it is being administered by state courts.

Four things have combined to doom **53%** of today's marriage starts. These are:  (1) No-fault divorce, (2) The women's lib movement, (3) An archaic court system, and (4) **MERCENARY LAWYERS.**

In no-fault, you can automatically get a divorce.  The victim, the husband or wife (or the child), can't stop it.  It becomes impossible to keep the family unit together.  Thus, with money as a reward supposedly awaiting them, many women today are (capriciously) abandoning their husbands and destroying the family fabric.  Likewise, a man may change his interests and decide the quick way out is through no-fault.

Part of the women's lib movement has embraced the concept of the divorce-widow syndrome ... that is, using the current no-fault divorce laws to their advantage, they have made divorce a business situation for monetary gains.  By this, the housewife is able to dump her husband, grab the house, get extra money for child support, cash in on alimony, and do her thing!

No-fault divorce is being administered by a court system which is 20 years behind the thinking of the country.  The courts still have a Good Guy - Bad Guy syndrome.  Sexual prejudice still reigns in America's courts. One parent will get custody of the children.  The other will be stripped of his parenthood.  Almost universally, custody is awarded on a sex basis to the female without proper consideration of the best interests of the child.  This can be corrected by the Department of Justice enforcing the Civil Rights Act of 1964, Title 3, in which any discrimination because of sex is prohibited.  Many states are allowing their courts to administer sex discrimination justice.  It further follows that under the Civil Rights Act of 1871, Section 1983 of Title 42, equal rights, privileges, and immunities under the law are continually and systematically denied on a sex basis.  This is particularly true against fathers.

The divorce process is a money tree.  Leeching off of America's family problems are <u>a group of lawyers more interested in their financial gains than in saving America's families.</u>  What a financial bonanza they have! With non-stoppable divorce they are guaranteed their high fees by court orders.  Such fees are, almost universally against the father.  There is a sham process, known as depositions, that allows two attorneys to play-act their parts and increase their hours of divorce costs.

**SEE OVER**

# COURT  WATCHER

## American Family Holocaust

The barbarous events which took place during World War II resulting in the murder of millions have been termed the Holocaust. In one of the darkest episodes of history, men operated under lower than animalistic standards and butchered their fellow man for no reasons other than greed and hate. It is an American tragedy that what goes on in today's divorce industry can be compared to World War II.

During the Holocaust, innocent individuals were identified as enemies of the Government. These individuals were members of various groups such as gypsies, Jews, Christians and various others. The Nazi Government and their willing allies, proceeded to have various laws passed so that they could cloak their misdeeds in so called "justice." One set of these so called "laws" were the Nuremberg Laws. These laws provided for the exclusion of members from government posts, professions, jobs, etc., and they also provided for the confiscation of property. Since these infamous laws were the "law of the land," government officials could proceed with impunity to enforce them against unfortunate group members, who were left with no defense since they could not ignore nor could they escape the "law of the land." By this process, millions were deprived of their professions, property, education, savings, and ultimately of their lives. It is important to emphasize once again that all of this was done under the "color of law."

Today we tragically have the same set of circumstances. A powerful group; **Attorneys**, have managed to have passed by our legislatures various "laws" favorable to them which victimize people trapped in divorces. Resulting in victimization and plunder under the color of law.

Not so different from what the Nazis and their willing conspirators did, innocent people are today herded into chambers and within a short time their lives are snuffed out. The Nazi's used poison gas in their Chambers, but today the so called "law" is used in the judges chambers. The hapless victims, not knowing what lies ahead, enter these chambers unsuspecting. In the case of the Nazis, and their willing conspirators, the victims were told that they were being ushered into shower rooms. Today victims are fooled into entering by being told that they are going to receive justice. Shockingly, the results of both types of chambers are similar. Don't doubt for one second that people are not dying as a result of entering judges chambers today. Routinely, people are losing everything they have in a material sense including their savings, homes, and businesses. More importantly, they also frequently lose their families and lives. The ones who profit from all of this are attorneys, a group which has set itself above everyone else and profits by trafficking on the mysery and despair of people getting trapped into divorce, and child custody.

Isn't it time to shut down the judicial chambers death machine? How many more innocent victims trapped into divorce have to be destroyed before this system is changed? Isn't it time that the Nuremberg Laws of our day are struck down and relegated to the scrap heaps of history where they belong, and that greedy attorneys and unethical attorney-judges are put on notice that society will no longer tolerate their crimes against the families? Isn't it time to institute our own Nuremberg trials to bring to justice those who have caused so much misery to so many for so many years? Isn't it time to act now before the next generation, our children, become victims of the courtroom holocaust that our generation has witnessed?

## DIVORCE COURTS ARE FAMILY SLAUGHTERHOUSES
# DON'T VOTE FOR ATTORNEYS

www.constitutionalguardian.com • www.judicialaccountability.org. • www.americans4legalreform.com
www.uniformdivorce.com

# Mayor candidate wants lawyers put out of office

## The Miami Herald

THURSDAY, JUNE 24, 1999



**MIAMI BEACH**

PATRICK FARRELL / Herald Staff

**THE MAN WHO WOULD BE MAYOR:** Mike Calhoun is a former county commissioner and former real estate broker.

**By ALLISON KLEIN**
Herald Staff Writer

*aklein@herald.com*

It's not because of Monica Lewinsky, Whitewater or Travelgate, but Miami Beach mayoral candidate Mike Calhoun believes Bill Clinton should step down.

He simply thinks lawyers — including Miami Beach Mayor Neisen Kasdin — have no place in public office.

"Nothing personal," said Calhoun, 72, a former Miami-Dade commissioner. "It's right there in the Florida Constitution. There's just no way to deny it."

He likens himself to populist Minnesota Gov. Jesse Ventura, saying both he and Ventura are bucking the establishment and appeal to voters who have "had enough" of politics as usual.

Calhoun is part of a movement that believes it is a violation of separation of powers for lawyers to legislate.

In his campaign literature, he asserts: "Better a Madison-Voter's Revolution . . . than a bloody one . . . which will soon be upon us if we fail."

Madison refers to President James Madison, co-author of the *Federalist Papers*, a collection of essays written in the late 1700s supporting the U.S. Constitution.

"Good people all over the country are getting ready to revolt," Calhoun said. "People don't see the underlying problem. They don't know this law."

He contends lawyers are part of the judicial branch of government — and are prohibited from making laws.

He cites Article II, Section 3, of Florida's Constitution:

"Branches of Government: The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."

In April, the Florida Bar decided to take no stance on the issue.

"Legalized corruption," Calhoun calls it.

He asked Kasdin to resign and sent a letter to Miami-Dade County Supervisor of Elections David Leahy, challenging Kasdin's candidacy.

Responded Kasdin: "It's absurd and doesn't merit being responded to. The Founding Fathers of our country — Jefferson, Madison, Adams — were lawyers and all served as presidents."

But Calhoun says lawyers are problematic in government and that he has the answer for Miami Beach.

"The first thing I'd do as mayor is eliminate the millions of dollars that goes to lawyers' fees," Calhoun said. "There is so much corruption, but you can never fight it because you're busy playing on their field. We need to get off that field. Every problem we face is because of lawyers."

He said that by cutting "soft costs" such as lawyer and consultant fees, he can increase "hard costs" like police and fire salaries.

Calhoun doesn't think his campaign will cost much. He said he didn't know how much money he has collected in campaign contributions.

City records show that as of March 31, Calhoun had $640 — thousands of dollars less than other candidates.

Calhoun, who unsuccessfully ran for county mayor in 1974, is a former real estate broker. He also is a former member of Miami-Dade's zoning and tax relief boards.

Also running with the belief that lawyers should be barred from office is South Miami architect Frank Cervoni, a candidate for Miami-Dade mayor. Cervoni, 43, is a Coral Gables native who has never run for office.

Both men are consulting with Ronald Bibace, a philosopher and businessman who lives in Fort Lauderdale.

"This is a nonpartisan, nonparty issue. As long as you keep voting lawyers into office it doesn't matter," Bibace said. "When you replace Bugsy Malone with Al Capone, it makes no difference. Absolute power corrupts absolutely."

But Miami Beach City Attorney Murray Dubbin said lawyers are within their right to hold office.

"This is a nice way for Mike to introduce himself to a city that doesn't know him well," Dubbin said. "He's struggled for a political issue, something to latch onto. This is something he can talk about."

Dubbin added: "I don't think our Founding Fathers said if you're a lawyer, you're infected with a disease and can't serve in the legislative branch. When a lawyer goes to dinner or plays the guitar or becomes a member of the city commission, he's acting as a private person, not an officer of the court."

*Mike Calhoun*
*Ex-County Commissioner*

## Candidate opposed to lawyers in office

VOTE LAWYERS
out of Public Office
IT'S THE LAW
art. II sec 3
Fla. Constitution
(305) 791-3484
(pd pol ad)

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

**ORIGINAL RECEIVED FOR FILING**

IN THE MATTER OF THE MARRIAGE OF

**SEP 30 2009**

JEFFREY P. LAWSON
    HUSBAND,

**CLERK
CIRCUIT CIVIL DIVISION**

AND

2005DR001269XXXXNB
FAMILY DIVISION "FH"

KATHY ANN GARCIA-LAWSON
    WIFE.

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

<u>NOTICE OF INTERVENTION IN SUPPORT OF</u>
<u>**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND**</u>
<u>**OTHERWISE TO CHALLENGE**</u>
<u>**THE CONSTITUTIONALITY OF**</u>
<u>**FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,**</u>
<u>**AND JURISDICTION AFTER JUDGE KENNETH MARRA'S**</u>
<u>**DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)**</u>

The undersigned Intervenor asserts his or her right in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after
Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*                    1

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September _3̲0̲_, 2009, by: _Donna L Caliguire_

Intervenor's Name: _Donna L Caliguire_

Address: _1503 Wendell Rd_

City, County, State, Zip: _Jup, Fl 33469   Palm Beach County_

Telephone: _561- 745 0442_

E-mail: _____

43

Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under *Younger v. Harris*, 401 U.S. 37 (1971)

169 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Attorney General Bill McCollum
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Tel: 850414-3662 Fax:488-4872

Tel: 850-414-3662; Fax: 488-4872
Respectfully Submitted, and

Signed on September 30, 2009 by: _Donn Caligiur_

Intervenor's Name: _Donna Caligiuri_

Address: _1503 Oerald Rd_

City, County, State Zip: _Jup, Fl 33469_   _Palm Beach_

Telephone: _561-745-0442   561-768-1052_

E-mail: _____

44

Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under _Younger v. Harris_, 401 U.S. 37 (1971)

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

                            2005DR001269XXXXNB
AND                           FAMILY DIVISION "FH"

KATHY ANN GARCIA-LAWSON
    WIFE.

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

ORIGINAL RECEIVED
FOR FILING

SEP 3 0 2009

CLERK
CIRCUIT CIVIL DIVISION

**NOTICE OF INTERVENTION IN SUPPORT OF
KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND
OTHERWISE TO CHALLENGE
THE CONSTITUTIONALITY OF
FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,
AND JURISDICTION AFTER JUDGE KENNETH MARRA'S
DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her in this case to

demand an answer to one core question: are the Domestic Relations

Courts of the State of Florida really capable of evaluating the

constitutional violations of fundamental rights to life, liberty

and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought

for several years now (at least) to obtain answers to her questions

concerning the constitutionality of various provisions of the

Florida Dissolution and Domestic Relations Codes (especially but

not limited to Chapters 61 and 741 of the Florida Statutes). KATHY

ANN GARCIA-LAWSON has also challenged the qualities of substantive

and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after*       1
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September 30, 2009, by: _____

Intervenor's Name: SALVATORE MECITA

Address: 1426 S. ATLANTIC DR, LANTANA, FL 33462

City, County, State, Zip: LANTANA FL 33462

Telephone: (561) 585-8526

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

43

172 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Attorney General Bill McCollum
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Tel: 850414-3662 Fax:488-4872

Tel: 850-414-3662; Fax: 488-4872
Respectfully Submitted, and

Signed on September _3c_, 2009 by: _____

Intervenor's Name: _SALVATORE MELLIA_

Address: _1426 SADOTKI ATLANTIC DR,_

City, County, State Zip: _LANTANA , FC 33462_

Telephone: _(561) 585-8526_

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under* <u>*Younger v. Harris*</u>*, 401 U.S. 37 (1971)*

44

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND

KATHY ANN GARCIA-LAWSON
    WIFE.

COPY
OFFICIAL RECEIVED FOR FILING

OCT 14 2009

COMPTROLLER
PALM BEACH COUNTY
2005DR001269XXXXNB
FAMILY DIVISION "FH" DIVISION

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

### NOTICE OF INTERVENTION IN SUPPORT OF
### KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO
### TERMINATE AND OTHERWISE TO CHALLENGE
### THE CONSTITUTIONALITY OF
### FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,
### AND JURISDICTION AFTER JUDGE KENNETH MARRA'S
### DISMISSAL pursuant to *YOUNGER v. HARRIS*, 401 U.S. 37 (1971)

The undersigned Intervenor asserts his or her right in this case to demand an answer to one core question: are the Domestic Relations Courts of the State of Florida really capable of evaluating the constitutional violations of fundamental rights to life, liberty and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought for several years now (at least) to obtain answers to her questions concerning the constitutionality of various provisions of the Florida Dissolution and Domestic Relations Codes (especially but not limited to Chapters 61 and 741 of the Florida Statutes). KATHY ANN GARCIA-LAWSON has also challenged the qualities of substantive and procedural due process protection available in the Florida Domestic Relations and Dissolution Courts and proceedings, and asserted that

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*    1

174 of 193

Dissolution regime was a result of political and Public Fraud, resulting from a conspiracy to impose unconstitutional communistic values and an authoritarian regime on the American public.

In effect, Intervenor wishes hereby to obtain a final declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

*Susanna K. Surio White*

October

September 14, 2009

Intervenor's Name: Sus anna Kiraly Surio White

Address: 2005 Windwood Lane

City, County, State, Zip: Lakeland, FL 33813   (Polk County)

Telephone: 863-370-5989

E-mail: Solyommadar 246 gmail.com

JENNIFER JONES
Notary Public - State of Florida
My Commission Expires May 1, 2010
Commission # DD 547061
Bonded By National Notary Assn.

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*                    37

175 of 193

## CERTIFICATE OF FILING AND SERVICE

**I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judical Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:**

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted and signed on September _October 19_ 2009

By Intervenor: Name: _Susanna Kiraly Surio White_

Address: _2005 Windwood Lane_

City, County, State Zip: _Lakeland, Florida 33813 (Polk County)_

Telephone: _863-370-5989_

E-mail: _Solyommadar24@gmail.com_

*Notice of Intervention in Support of Constitutional Questions after*                    38
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

I, Susanna K. Surio White and my former husband, Girish Surio entered into a Mediated Settlement Agreement on April 1, 2003 which was subsequently signed by ourselves, our attorneys Karie Sanoba and Gregory Ruster, and later signed into an order by Judge Hunter on May 15, 2003. The Mediated Settlement Agreement, heretofore referred to as "Agreement", settled all the issues of the dissolution of marriage case, the number of said case being as follows: 53-2001-005445-0000-00. The terms of the Agreement included shared parenting with the children of the marriage spending approximately equal time with each parent. Karie Sanoba advised Susanna K. Surio White to allow Girish Surio to be the primary residential parent in exchange for the terms of the agreement which included the clause that "neither parent is to pay child support to the other". Prior to the Agreement, Susanna K. Surio White, hereafter referred to as "Susanna" was the primary residential parent. The dissolution of marriage was due in part to domestic violence perpetrated against Susanna by Girish Surio.

Each parent was urged to encourage a positive relationship of the children with the other parent. This is psychologically and socially beneficial to the children. Prolonged litigation does not foster amicable contact between former spouses and further damages families. Litigation benefits no one except of course those who see it as a commercial business and gain money from it, namely the court system which includes attorneys and judges.

The Agreement is a valid contract and was made part of the final dissolution of marriage order signed by Judge Hunter in the Circuit Court of the Tenth Judicial Circuit of Polk County, Florida. The order just mentioned states clearly that the Agreement is to be enforced.

The goal of Susanna was to live in peace as much as possible and raise the children in a positive atmosphere. The courts have committed fraud since 2005 when Judge James A. Yancey, at the request of Mr. Girish Surio, hereafter referred to as "Surio" and his attorney Robert L. Valentine urged the former wife, Susanna to be made to pay child support to Surio. Even though Susanna provided for the children whenever they were in her care and has not stopped doing whatever she can for them, there was undue interference by the courts into her family's affairs. Susanna has not ever consented to nor agreed to any orders made after or in opposition to the Agreement which both she and Surio had signed. The Florida Constitution States in Article I Section 23 that "every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by the law."

The orders given by Judges are in direct opposition to not only the Agreement signed by Girish and Susanna, but in addition to the above Article I of the Constitution of the State of Florida, also violate sections 1, 2, 3,6,9 ,10,11, 21 and 22. Due to the limited scope of this paper, the writer will only highlight Article I Sections 1, 2, 3, 9, 10 and 21 as pertaining to her experiences in the Florida Division of Family Courts, 10th Judicial Circuit, Bartow, Polk County, Florida. These are as follows: "all political power is inherent in the people...all natural persons, female and male alike, are equal before the law and have inalienable rights (given by their Creator) among which

are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry (be paid for an occupation, labor or work), and to acquire, possess and protect property….no person shall be deprived of any right because of race, religion, national origin, or physical disability…there shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof…(this would include the establishment of marriage as instituted by God ) ….no person shall be deprived of life, liberty or property without the due process of law, or be twice put in jeopardy for the same offense… no bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed… the courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." The dissolution of marriage action was filed in 2001 and the Agreement and Final Dissolution of Marriage documents were signed by Judge Hunter in May of 2003. Why then are Susanna and Girish still involved in ongoing litigation in the year 2009? This is ludicrous. The actions of the court are prolonging litigation unnecessarily. Judge Yancey, Surio and Robert Valentine, hereafter "Valentine", are in violation of the U.S. and Florida Constitutions causing Susanna to be deprived of her rights as one of the people domiciled in the state of Florida. I, Susanna, have not ever consented to nor agreed to any of the orders or actions done AFTER April 1, 2003 and May 15, 2003 that have been sent, requested or submitted by Surio, Valentine or any other Judge of the 10th Judicial Circuit Court of Polk County, Florida. I am still waiting with lots of delay to have my grievances heard. The most recent judge assigned to the case, judge Doyel, has been partial and denied every request I submitted, not granted any hearings and has even ignored my most recent filings including papers for a Declaratory Judgment.

As a result of these unconscionable acts of the 10th Judicial Circuit Court of Polk County, I Susanna, have had my labor contracts violated since 2005 with the forcible taking of my wages, have lost work positions, could not afford to pay my household living expenses and have lost property. This is not only a travesty but a detriment to me as a parent. Without the humanitarian aid of friends and family, I do not know where I would be in my state of destitution. Again, the actions of Surio, Valentine and interfering of the corrupt court has resulted in financial and job losses, not to mention extreme stress, anxiety, denial of some of my visitation hours with my children (primarily during the school year), travel restrictions due to the denial of my passport directly violating my civil liberties, inability to visit family who live overseas and further develop in my chosen profession as a foreign language instructor. To further increase my knowledge and keep my teacher certification current requires attending staff development and/or taking college courses which at the present time I am unable to afford. Moreover, the children have ultimately suffered being deprived of knowing and meeting their family overseas who are from Susanna's side of the family. Susanna has also been unable to visit with her Uncle Frances and Aunt Julia and was also unable to attend their funerals upon their passing.

In spite of going to the 10th Judicial Circuit Court for a redress of grievances and believing that the Agreement would be upheld "without delay", the very opposite has happened. The interference of the courts has resulted in taking away my ability to financially provide for my

children when they are with me. I, Susanna, am unjustly being required to pay twice for them: once when they are with me and also when they are with their dad. Before the interference of the court I was able to care for my children financially and it was my every intention to continue in this manner as I take the responsibility as a mother a serious and God given gift. My children deserve to have a financially, socially and mentally stable environment without all the bickering that the courts propagate to further their own ends. Susanna is being compelled against her will to be oppressed by an astronomical debt which she is unable to pay and which Susanna never agreed to. The freedom to care for the children in a manner in accordance with realistic finances has been taken away. The children are not benefitted by these unlawful, unconstitutional proceedings. The children mentioned now and up to this point are the children born from the marriage of Susanna and Girish. The children are continuing to experiences the effects of unnecessary and ridiculously propagated litigation seemingly interminable which deprives both their mother and father of finances while being deposited in the coffers of the commercially corrupt institution that viciously lives off of and destroys families with simulated legal processes.

It is to no one's benefit to prolong the court battle which is in direct opposition to a document, namely the Agreement, which had already settled all of the issues of the dissolution of marriage. The emotional, financial, mental and relational toll on all the unfortunate parties such as Susanna and others unwittingly deceived by the vicious family court system needs to stop! These pages summarize why I am supporting Kathy Garcia Lawson's efforts. These words are but a synopsis of the continuing suffering of Susanna and countless others being violated by an unchecked group of racketeers who think they can get away with unconstitutional acts violating the beliefs and inalienable rights given to people by the Creator Who holds everyone accountable for their actions and Who inspired the Founding Fathers of this nation to write the Declaration of Independence, the Bill of Rights and the Constitution. We the people need to stand up to injustice, and righteousness needs to prevail against wickedness.

I, Susanna K. Surio White hereby declare that the content of this aforementioned Synopsis is a true and correct account which I have summarized to the best of my ability. The quotations are taken directly from the Constitution of the State of Florida. These statements may be used in conjunction with Kathy Garcia Lawson's paperwork as part of my statement or affidavit.

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
   HUSBAND,

                            2005DR001269XXXXNB

AND                           FAMILY DIVISION "FH"

KATHY ANN GARCIA-LAWSON
   WIFE.

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

### NOTICE OF INTERVENTION IN SUPPORT OF
### KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO
### TERMINATE AND OTHERWISE TO CHALLENGE
### THE CONSTITUTIONALITY OF
### FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE,
### AND JURISDICTION AFTER JUDGE KENNETH MARRA'S
### DISMISSAL pursuant to *YOUNGER v. HARRIS*, 401 U.S. 37 (1971)

The undersigned Intervenor asserts his or her right in this case to demand an answer to one core question: are the Domestic Relations Courts of the State of Florida really capable of evaluating the constitutional violations of fundamental rights to life, liberty and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought for several years now (at least) to obtain answers to her questions concerning the constitutionality of various provisions of the Florida Dissolution and Domestic Relations Codes (especially but not limited to Chapters 61 and 741 of the Florida Statutes). KATHY ANN GARCIA-LAWSON has also challenged the qualities of substantive and procedural due process protection available in the Florida Domestic Relations and Dissolution Courts and proceedings, and asserted that

*Notice of Intervention in Support of Constitutional Questions after*
*Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*      1

180 of 193

regime on the American public.

In effect, Intervenor wishes hereby to obtain a final declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on September *October* 14, 2009, by: _Leslie K. Garcia_

Intervenor's Name: _Leslie K. Garcia_

Address: _5047 Magnolia Bay Circle_

City, County, State, Zip: _Palm Beach Gardens, FL 33418_

Telephone: _(561) 630-9783_

E-mail: _lesliekarindennis@yahoo.com_

Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under _Younger v. Harris_, 401 U.S. 37

181 of 193

## CERTIFICATE OF FILING AND SERVICE

**I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judicial Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:**

**Clerk of 15th Judicial Circuit Court, Palm Beach County**
**Palm Beach County Courthouse**
**North County Courthouse**
**3188 PGA Boulevard**
**Palm Beach Gardens, Florida 33401-4599**

**Mr. Jeffrey P. Lawson**
**c/o Steve Marchildon**
**113 Ashley Court**
**Jupiter, Florida 33408**

**Ms. Inger Garcia-Armstrong, Esq.**          **Attorney General Bill McCollum**
**Attorney of Record for and c/o**               **Office of the Attorney General**
**Dr. Kathy Ann Garcia-Lawson**              **The Capitol PL-01**
**2620 Nature's Way**                                    **Tallahassee, Florida 32399-1050**
**Palm Beach Gardens, Florida 33410**        **Tel: 850414-3662 Fax:488-4872**

Tel: 850-414-3662; Fax: 488-4872
Respectfully Submitted, and

Signed on September *October 14*, 2009 by: _Leslie K. Garcia_

Intervenor's Name: _Leslie K. Garcia_

Address: _5047 Magnolia Bay Circle_

City, County, State Zip: _Palm Beach Gardens, FL 33418_

Telephone: _(561) 630-9783_

E-mail: _leslie Karindennis@yahoo.com_

*Notice of Intervention in Support of Constitutional Questions after*          38
*Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
JUDGE RICHARD L. OFTEDAL

IN THE MATTER OF THE MARRIAGE OF

JEFFREY P. LAWSON
    HUSBAND,

AND                 2005DR001269XXXXNB
                            FAMILY DIVISION "FH"

KATHY ANN GARCIA-LAWSON
    WIFE.

TO THE HONORABLE JUDGE OF SAID CIRCUIT COURT:

## NOTICE OF INTERVENTION IN SUPPORT OF
**KATHY ANN GARCIA-LAWSON'S COURT-LICENSED COMPLAINT TO TERMINATE AND OTHERWISE TO CHALLENGE
THE CONSTITUTIONALITY OF
FLORIDA DOMESTIC RELATIONS COURTS, PROCEDURE, AND JURISDICTION AFTER JUDGE KENNETH MARRA'S DISMISSAL pursant to *YOUNGER v. HARRIS,* 401 U.S. 37 (1971)**

The undersigned Intervenor asserts his or her right in this case to demand an answer to one core question: are the Domestic Relations Courts of the State of Florida really capable of evaluating the constitutional violations of fundamental rights to life, liberty and property which these Courts have perpetuated?

As this Court is well aware, KATHY ANN GARCIA-LAWSON sought for several years now (at least) to obtain answers to her questions concerning the constitutionality of various provisions of the Florida Dissolution and Domestic Relations Codes (especially but not limited to Chapters 61 and 741 of the Florida Statutes). KATHY ANN GARCIA-LAWSON has also challenged the qualities of substantive and procedural due process protection available in the Florida

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*      1

declaratory judgment that state-licensed marriage is a state-imposed contract of adhesion and that this Court will find that the Florida state licensing statutes create and constitute constitutionally impermissible licensing and taxing of a fundamental right and that this regime further constitutes and creates a constitutionally impermissible excessive entanglement of state and religious affairs.

Respectfully Submitted,

And Signed on ~~September~~ _October 14_, 2009, by:_____

Intervenor's Name: _Larraine M. Gonzalez_

Address: _6961 Miami Lakeway S._

City, County, State, Zip: _Miami Lakes, FL 33014_

Telephone: _305-823-8850_

E-mail:_____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under Younger v. Harris, 401 U.S. 37 (1971)*

43

184 of 193

## CERTIFICATE OF FILING AND SERVICE

I, the undersigned Intervenor, do hereby certify that I filed an original signed copy of the above-and-foregoing Notice of Intervention with the Palm Beach County Clerk of the Fifteenth Judical Circuit Court and simultaneously served a true and correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

Clerk of 15th Judicial Circuit Court, Palm Beach County
Palm Beach County Courthouse
North County Courthouse
3188 PGA Boulevard
Palm Beach Gardens, Florida 33401-4599

Mr. Jeffrey P. Lawson
c/o Steve Marchildon
113 Ashley Court
Jupiter, Florida 33408

Ms. Inger Garcia-Armstrong, Esq.
Attorney of Record for and c/o
Dr. Kathy Ann Garcia-Lawson
2620 Nature's Way
Palm Beach Gardens, Florida 33410

Respectfully Submitted, and

Signed on September *14*, 2009 by: *Lorraine M. Gonzalez*

Intervenor's Name: *Lorraine M Gonzalez*

Address: *6961 Miami Lakeway S*

City, County, State Zip: *Miami Lakes Fl 33014*

Telephone: *305 822-8859*

E-mail: _____

*Notice of Intervention in Support of Constitutional Questions after Federal Court Dismissal under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)*

44

185 of 193

0500781

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

IN RE: The Marriage of

JEFFREY P. LAWSON,

     Petitioner/Husband,

and

KATHY ANN GARCIA-LAWSON,

     Respondent/Wife.

CASE NO. 2005 DR
Family Law Division
**50  2005DR001269XXXX MB**

 

_____/

### HUSBAND'S VERIFIED PETITION FOR DISSOLUTION OF MARRIAGE

COMES NOW, the Petitioner/Husband, JEFFREY P. LAWSON (hereinafter referred to as "Husband"), by and through his undersigned attorney and files this, his Verified Petition for Dissolution of Marriage as follows:

1.  <u>Action for Dissolution</u>: This is an action for dissolution of marriage between the Husband and the Respondent/Wife, KATHY ANN GARCIA-LAWSON (hereinafter referred to as "Wife").

2.  <u>Residency</u>: The Husband has been a resident of the State of Florida for at least six (6) months immediately before filing this Petition.

3.  <u>Marriage:</u> The parties were married to each other on March 5, 1988 in Naples, Florida.

4.  <u>Grounds</u>: The marriage between the parties is irretrievably broken.

5.  <u>Children</u>: One minor child was born of this marriage to wit: Alexandra Ann Garcia Lawson, born June 25, 1994. No other children are contemplated and the Wife is not pregnant.





 FEB 0 1 2005

In Re the Marriage of Lawson
Verified Petition for Dissolution of Marriage                     Page 2

6.   It is in the best interest of the minor child that the parties
     have shared parental responsibility of the children.

7.   It is in the best interest of the minor child that the parties
     substantially share residential responsibility of the minor
     child, and that both parents have frequent and continuing
     contact and reasonable access with the minor child on a
     temporary and permanent basis.

8.   The Husband currently provides health insurance for the family
     through his employment.

9.   Both parties are able to contribute to the support of the
     parties' minor child pursuant to the Florida Guidelines on
     Child Support.

10.  <u>Non-Military Service</u>:  Both parties are over the age of
     eighteen (18) years of age and neither the Wife nor the
     Husband is a member of the military service.

11.  <u>Equitable Distribution</u>:  During the course of the marriage the
     parties acquired real and personal property, and they incurred
     debts, all of which require equitable distribution and
     apportionment, respectively, by this Court.  The Husband seeks
     an equitable distribution of the marital assets and
     liabilities pursuant to Florida Statutes §61.075 (2004).

12.  The parties own the marital home located at 2620 Natures Way,
     Palm Beach Gardens, FL 33410, which is encumbered by a
     mortgage in favor of SunTrust Bank in the current approximate



amount of $330,000.00 and Loan Modification in favor of SunTrust Bank in the current approximate amount of $20,000.00.

13. The Husband purchased real property located at Lot 19, Kelsey Drive, South Bristol, Maine, during the marriage with his nonmarital assets. No improvements have been made to the property with marital income or assets and the property has no appreciated value that is the result of either parties' marital efforts. The Husband requests this asset be determined to be his non-marital asset.

14. <u>Attorney's Fees</u>: The Husband was required to retain the services of the undersigned attorney. If the Wife engages in vexatious litigation or over litigation, the Husband requests she should contribute to his attorneys fees and costs.

WHEREFORE, the Petitioner/Husband, JEFFREY LAWSON, respectfully requests that this Court assume and maintain jurisdiction of this matter and the parties hereto and grant the following relief:

A. Enter a Final Judgment dissolving the parties' marriage;

B. Order shared parental responsibility of the minor child;

C. Order a substantial time sharing residential parenting schedule;

D. Order the parties to pay child support according to the statutory child support guidelines;



In Re the Marriage of Lawson
Verified Petition for Dissolution of Marriage                                    Page 4

      E.    Order the Husband to continue to provide health insurance for the minor child so long as it is available at a reasonable cost through his employer;

      F.    Determine and equitably distribute the parties' marital real and personal property and debts;

      G.    Determine the real property in Maine to be the Husband's non-marital asset;

      H.    Award the Husband reasonable attorney's fees and costs consistent with this petition on both a temporary and permanent basis; and

      I.    Grant such further relief as this Court deems just and proper.

### COUNT II - PARTITION OF REAL PROPERTY

The Husband realleges and reavers the allegations contained in paragraphs 1. through and including 14., and further alleges:

15.    This is an action for partition of real property pursuant to Chapter 64, Stat. (2004).

16.    The property sought to be partitioned is located at 2620 Natures Way, Palm Beach Gardens, Florida and is legally described as:

Lot 8, NATURES HIDEAWAY, A P.U.D., according to the Plat thereof on file in the Office of the Clerk of Circuit Court in and for Palm Beach County, Florida, as recorded in Plat Book 81, Pages 179 and 180.

17.    The title to the real property is held by the parties as tenants by the entireties. Upon the entry of a Final Judgment



of Dissolution of Marriage, the property will be held by the parties as tenants in common.

18.    The place of residence of each interested person in the real property sought to be partitioned and their respective interest therein is set forth as follows:

JEFFREY LAWSON                    KATHY ANN GARCIA-LAWSON
2620 Natures Way                  2620 Natures Way
Palm Beach Gardens, FL 33410      Palm Beach Gardens, FL 33410
     50%                               50%

19. The property is encumbered by a mortgage and note signed by the parties and owing to SunTrust Bank in the current approximate amount of $330,000.00 and Loan Modification in favor of SunTrust Bank in the current approximate amount of $20,000.00.

20.    The real property is indivisible and is not subject to partition in kind without prejudice to the owners.

WHEREFORE,    the    Petitioner/Husband,    JEFFREY    LAWSON, respectfully   requests   that   this   Court   assume   and   maintain jurisdiction of this matter and the parties hereto and grant the following relief:

A.    Order that a partition sale be held at public auction or private sale pursuant to the provisions of Chapter 64, Fla. Stat., and that the proceeds of such sale be paid into the registry of the court;

B.    Order that out of the proceeds of such sale all costs, taxes, and the Husband's attorney fees be paid;

C.    Order that the remaining sale proceeds be equally divided between the Wife and Husband;



<u>In Re the Marriage of Lawson</u>
Verified Petition for Dissolution of Marriage                                    Page 6

---

D.   Order that any mortgages and liens existing at the time
     of the filing of the Petition for Dissolution of Marriage
     be paid in full from the proceeds;

E.   Appoint a Special Master or Commissioners to conduct the
     sale and report to the Court, as provided by §64.061,
     Fla. Stat.; and

F.   Provide such other and further relief as this Court deems
     just and appropriate.

                              MALLORY LAW GROUP
                              1907 Commerce Lane
                              Suite 104
                              P.O. Box 8858
                              Jupiter, Florida 33468
                              Telephone: (561) 743-3708
                              Facsimile: (561) 743-3729

BY:   _____
      RHONDA R. WERNER SCHULTZ
      Florida Bar No. 506435
      For the Firm

( 1—6 )

In Re the Marriage of Lawson
Verified Petition for Dissolution of Marriage                                    Page 7

---

## VERIFICATION

I, JEFFREY P. LAWSON, upon my own personal knowledge, hereby swear and attest that the allegations set forth above in this Verified Petition for Dissolution of Marriage are true and accurate.

_____
JEFFREY P. LAWSON

STATE OF FLORIDA
                            ss
COUNTY OF PALM BEACH

BEFORE ME, a person authorized to take oaths in the State of Florida, personally appeared JEFFREY P. LAWSON, who ~~presented the~~ is ~~following identification:~~ *personally known to me*, and, having been duly sworn, says that he has read the above and foregoing Petition for Dissolution of Marriage, that he has personal knowledge of the factual allegations contained in paragraphs 1 through and including 16, and that they are true and correct.

SWORN TO AND SUBSCRIBED before me this 21st day of January, 2005.

_____
Notary Public, State of Florida at Large
Print Name:_____
Commission No.:_____
My commission expires:

H:\CLIENTS\FAMILY\Lawson\Pleadings\Petitionkidspartition.wpd


Judy F Thygesen
My Commission DD112256
Expires April 25, 2006



%JS 44 (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

FILED by _____ D.C.
ELECTRONIC

**Oct 30, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### I. (a) PLAINTIFFS
JEFFREY P. LAWSON
C/O STEVE MARCHILDON 113 ASHLEY CT,
JUPITER FL 33408

(b) County of Residence of First Listed Plaintiff PALM BEACH
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS
KATHY ANN GARCIA-LAWSON
2620 NATURES WAY
PBG, FL 33410

County of Residence of First Listed Defendant PALM BEACH
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
PRO SE
FAX 561-691-1423
E-MAIL GARCIALAWSON@HOTMAIL.COM

Attorneys (If Known)

(d) Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

09 CV 81615 RYSKAMP / VITUNAC

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien Detainee | | ☑ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☑ YES ☐ NO

JUDGE KENNETH A. MARRA     DOCKET NUMBER 9:08-cv-80865-KAM

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. SECTIONS 1343 & 1443(1), 28 U.S.C. SECTIONS 2201-2202, 42 U.S.C. SECTION 1981, 1982, 1983

LENGTH OF TRIAL via 7 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
Kathy M. Garcia - Lawson

DATE 10·30·09

FOR OFFICE USE ONLY
AMOUNT 350.00     RECEIPT # 126521     IFP

193 of 193